ABRAM W. HOUSE, Appellant, *v.* EASTERN BUILDING AND LOAN
ASSOCIATION, Respondent.

*Building and loan association — payments to which a certificate holder is entitled on*
*withdrawing therefrom — order of payment to withdrawing members — applica-*
*tion of the by-laws.*

A stipulation, in the certificate of a building and loan association, that if the
holder shall withdraw from the association before the maturity of his stock, he
shall receive the full amount paid therefor, with "dividends at the rate of 6 per
cent per annum," is controlled by provisions in the association's articles of
incorporation, and in its by-laws, in force at the time the certificate was issued,
to the effect that the dividends in such case shall not exceed the net earnings
of the stock, and that the association shall not be required to pay to withdraw-
ing members more than one-half of the net receipts of the monthly installments
paid in during the month in which the withdrawals occur, where the holder,
by his application for the certificate, and the certificate itself, agrees to be bound
by the terms, conditions, by-laws, rules and regulations of the association.

The words, "it is further agreed," contained in the certificate, imply a continu-
ance of the preceding agreements, subject to the same conditions.

Payments to withdrawing members should be made in the order of their applica-
tions for withdrawal, independent of an express provision to that effect in the
by-laws of the association.

A by-law providing that "The Association shall have sixty days after the filing
of the proof of a claim and the approval thereof by the board of directors in
which to pay the same, and this applies to claims maturing by death as well as
to maturity of stock," does not apply to the withdrawal by a certificate holder
before the maturity of his certificate.

*Semble,* that it is unlawful for a building and loan association to covenant to pay
a certificate holder a greater dividend upon his stock than that earned by it.

APPEAL by the plaintiff, Abram W. House, from a judgment of
the Supreme Court in favor of the defendant, entered in the office
of the clerk of the county of Oswego on the 18th day of December,
1899, upon the decision of the court, rendered after a trial at the
Oswego Trial Term before the court without a jury, dismissing the
complaint upon the merits.

*O. M. Reilly,* for the appellant.

*Leonard C. Crouch,* for the respondent.

Judgment affirmed, with costs, on the opinion of HISCOCK, J.,
delivered at Special Term.

All concurred.

The following is the opinion of HISCOCK, J., delivered at Special Term:

HISCOCK, J.:

This action is brought to recover $100 paid by plaintiff to defendant upon two shares of stock issued by it to him November 1, 1892, together with "dividends at the rate of 6 per cent per annum" down to June 19, 1899, less certain small sums for expenses, which it is conceded it was entitled to deduct. Plaintiff bases his action upon a clause in the certificate of shares issued to him which provided that, in case he at any time before maturity of said stock desired to withdraw from the association, he should receive the full amount paid for the certificate with dividends at the rate of six per cent per annum.

The defendant is an ordinary building and loan association. The stock issued to plaintiff was what was known as paid-up stock. He was not to pay anything more upon it, but the balance of $100 of the par value, over and above what he paid, was to be made up from the accumulation of profits thereon. Desiring to withdraw before the stock matured, he made a demand upon the company for the sum for which he now sues. What took place upon that demand being made is covered by a stipulation in the case, and it is to the effect that the attorney went to the defendant's office and "then and there offered to surrender the certificate in this case upon the payment of the amount of capital invested, to wit, $100, together with dividends upon the same from the first day of November, 1892, at the rate of six per cent, which he stated was provided for upon the face of the certificate, but would allow the association to deduct the expense element, as provided for in the second paragraph of the terms and conditions printed on the back of the certificate. His offer to surrender the certificate upon the above condition was rejected, and he was informed that payment would be made in accordance with the terms of the articles of incorporation and the by-laws, if the said certificate was surrendered for withdrawal; that said certificate had not earned the amount which the plaintiff's attorney demanded, and for that reason he (the defendant's officer) refused to pay it."

Three defenses are urged by the defendant, which I shall consider: *First,* that neither at the time of the alleged demand or proof of

claim on the defendant, nor at any time since, has the defendant had any moneys in its treasury applicable, under its articles of incorporation and by-laws, to the payment of the plaintiff's shares.

*Second,* that the payment of dividends at six per cent as demanded by plaintiff would exceed the net earnings of the shares of stock in question, said earnings having amounted to but four per cent.

*Third,* that the defendant association, under its by-laws, was entitled to sixty days after demand or filing of proof of claim in which to pay, and that this action, having been commenced on the very day of the demand, was prematurely brought.

I will consider these defenses in the inverse order of their above statement. Assuming for the present that the plaintiff is bound by defendant's by-laws, in operation at the time when this certificate was issued to him; I do not think that they sustain this last defense. Section 17 of them provides: " The Association shall have sixty days after the filing of the proof of a claim and the approval thereof by the board of directors in which to pay the same, and this applies to claims maturing by death as well as to maturity of stock."

As stated above, plaintiff bases his action upon his election to withdraw the sum paid by him to defendant for its shares before maturity thereof, as it is provided in the certificate issued to him he may do. The clause just quoted and upon which defendant relies to sustain the defense now being considered is, by its terms, made applicable to claims based upon death and upon maturity of stock and is not applicable to plaintiff's case.

I think the second defense stated is sustained. Plaintiff did not give any evidence to show that his shares of stock had earned six per cent dividends from the date they were issued to him. Upon the other hand, evidence was given by defendant to the effect that they had earned only about four per cent, and this upon the trial was assumed to be the fact. If plaintiff is subject to and bound by defendant's articles of incorporation and by-laws, as I think he is, he is certainly limited upon withdrawal of his stock to its net earnings. Article 12 of defendant's articles of incorporation provides for the withdrawal of stock before maturity as plaintiff is seeking to do, but it places a limitation upon the amount of interest or dividends to be paid upon such withdrawal, as follows : " Shares which are not pledged may be withdrawn before maturity * * * with

such additional interest, if any, as the by-laws may provide, except that the same shall not exceed the net earnings of said stock."

Independent, however, of express provisions by the defendant, I have no doubt that the general principles of law cover this subject, and limit plaintiff's right to income upon his stock to its earnings. The clause in his certificate upon which he relies herein provides that upon withdrawal before maturity he shall receive the full amount paid for his certificate, "with dividends at the rate of 6 per cent per annum." It will thus be noted that the obligation of the company, when narrowly tested by this clause alone, is not to pay a certain sum with a fixed rate of interest, but with a certain rate of dividend. It does not seem necessary to urge or reason at length that this language assured the plaintiff as a stockholder in defendant the earnings upon his stock up to a certain per cent; that thereby defendant did not, and could not if it would, guarantee that such earnings should reach a certain figure; that if, as matter of fact, the earnings subject to a division upon this stock only reached four per cent, that would be the limit of plaintiff's rights; that defendant was not bound to pay, but, by various principles of law and statutory provisions, was prohibited from paying to plaintiff upon his stock dividends at a greater rate than it earned.

Plaintiff's only demand for payment of, and offer to surrender, his shares made it an essential condition that he should receive an amount equal to dividends at the rate of six per cent. The point was expressly raised by the defendant that his stock had not earned and was not entitled to it. His demand and offer were not a sufficient basis for this action.

I pass to the consideration of the third defense. Upon June 19, 1899, when plaintiff presented his certificate and attempted to withdraw his moneys from defendant, there had been presented for similar withdrawal stock to the amount of $421,829.46, and there was on hand applicable to the payment of withdrawals only $1,800. During the month of June, prior to plaintiff's demand, there had been presented for withdrawal stock aggregating $3,023.10, and there had been received as applicable to the payment of such withdrawals but $2,257.76. So that if defendant is entitled to limit its payment of attempted withdrawals to the amounts received from its members (its only source of income), and in the order in which

applications are made for withdrawal, plaintiff was not entitled to receive his money when he commenced his action. And this upon the figures given would be so even should the proposed withdrawals and receipts of each month be considered by themselves.

If plaintiff is bound by defendant's rules and regulations, in force at the time he took out his certificate, he is limited to payment upon withdrawal in the manner claimed. Article 12 of the articles of incorporation provides: "In no event shall the association be required to pay to withdrawing members more than one-half of the net receipts of the monthly installments paid in during the month in which the withdrawals occur." Section 19, article 14 of the by-laws, provides: "Any shareholder wishing to withdraw his stock may be allowed to do so at any time, but the association shall not be required to pay out more than one-half of the net receipts of the monthly installments paid in that month to withdrawing members."

After plaintiff purchased his stock another by-law was passed which is urged upon my attention in this connection. It reads: "Payments shall be made in the order of the applications for withdrawal, but the association shall not be required to pay out on withdrawing or matured stock more than one-half the amount received from dues and stock payments in any month." I do not regard this provision as materially affecting this case. If the other provisions already quoted apply I think the rule should be, independent of express provision to that effect, that if the funds on hand applicable to the payment of withdrawals were insufficient to pay them all, they should be applied to payment in the order in which applications for withdrawal were made. So far as the latter part of the last provision is concerned, it is broader in plaintiff's favor as to the funds from which withdrawals may be paid than those in force when he joined the company.

Plaintiff denies that he is bound by the provisions quoted. In his application for shares he says: "I hereby agree to abide by all the terms, conditions and by-laws contained or referred to in the certificate of shares, and will also comply with all the rules and regulations of said association." The certificate of shares issued to him recited that the agreements therein made by the company are so made in consideration of the moneys paid by plaintiff to it, and also of "agreements and statements contained in the application for

membership * * * together with full compliance with the terms, conditions and by-laws of this corporation."

I do not understand that the plaintiff claims that his certificate of shares was generally free from and superior to the restrictions of the articles of incorporation and by-laws now relied upon by defendant. But he insists that the clause in it relating to the right to withdraw and payment thereupon standing by itself, is an absolute and unconditional promise and free from the qualifications urged by defendant. It seems to me, however, that this is too narrow and restricted a construction. The certificate on its face starts out with an agreement to pay $200 upon maturity, etc., to plaintiff in consideration of his agreement (in effect) to abide by all the terms, conditions and by-laws of the association. Then right along in continuation of this agreement, "It is further agreed" that he may withdraw his stock before maturity and receive the amount paid for it, etc. No question is made but that the first clause of the agreement is subject to the provisions urged by defendant, and it seems to me that it would be a very strained interpretation to hold that the second clause relied upon by plaintiff is to be considered entirely by itself and independent of all the other provisions of the certificate. Resorting to pretty narrow rules of construction, the word "further" in "it is further agreed" naturally implies a continuation of the preceding agreements and subject to the same conditions.

But viewing it from another standpoint: This was a mutual association. Plaintiff, under the terms of his application for and certificate of stock, is to be charged with notice and knowledge of the provisions of the articles of association and by-laws. They both told him that the company could not be compelled to pay withdrawing members except from certain funds. These or some similar provisions were quite essential for the protection of all the members of the company. As said by Judge ANDREWS in a case against a similar association : "It was essential to the practical working of the scheme and purpose of the organization. The association, if the plan was followed, could have no assets of any considerable amount available for immediate repayment of dues paid in by withdrawing members. It was not a moneyed corporation in any proper sense, and would not in the ordinary course of its business have assets readily convertible into money. Its assets would be repre-

sented in the main by loans to members on mortgages payable in small weekly payments. If no restriction existed preventing withdrawing members from immediately maintaining actions to recover their dues and enforcing judgments obtained, it is evident that this and similar associations would have a precarious existence. They would be in peril at almost any moment to have their operations arrested and to be thrown into a receivership by the conjoint action of a few withdrawing members. The beneficial purpose of the statute for the encouragement of small savings would be frustrated, and the assets of the association subjected to costs and expenses which would seriously impair the general fund contributed by the members." (*Engelhardt* v. *Fifth Ward Loan Assn.*, 148 N. Y. 281, 285.) Being thus chargeable with knowledge of the general nature and purpose of the association which he was joining and of its rules and regulations, I think it must be held that when plaintiff took from defendant its agreement to pay him upon withdrawal before maturity a certain sum, he took it subject to the qualifications as to method and manner of payment now claimed by it.

I do not regard the case of *Sinteff* v. *People's Building Assn.* (37 App. Div. 340), especially relied upon by plaintiff's counsel, as an authority for his claims in this action. That case simply holds that a promise made by such an association, absolute and unconditional, cannot be qualified in important and substantial respects by regulations adopted afterward. It does not hold that such promise is independent of or superior to the articles of incorporation and by-laws in force at the time of its making. It proceeds upon quite the opposite theory.

Judgment ordered dismissing plaintiff's complaint, with costs.

# Cases

# SECOND DEPARTMENT

IN THE

## APPELLATE DIVISION,