William Engelhardt, Respondent, *v.* The Fifth Ward Permanent Dime Saving and Loan Association, Appellant.

148  281
169  ¹  49

1. Mutual Loan Association — Refund of Dues on Withdrawal — Collection of Funds, as a Condition Precedent. When the articles of association of a mutual loan association, organized under chapter 122, Laws of 1851, and its amendments, provide that dues paid in will be refunded to withdrawing members "when the necessary funds are collected," it will constitute a good answer to an action, as upon a debt presently due and payable, brought by a withdrawing member to recover the amount of dues paid in by him, that neither at the time of his withdrawal nor subsequently before the action was brought, were there in the treasury of the association any funds collected out of which the claim could be paid. *So held,* where no bad faith was alleged, and the association had not discontinued business or become insolvent.

2. Articles of Association. The articles of association of a mutual loan association, organized under the act of 1851, constitute a contract between the association and its members.

3. By-laws Enacted Subsequent to Membership. A member of a mutual loan association, organized under the act of 1851, is subject not only to regulations existing when he became a member, but to such as may be enacted from time to time by the association, within the scope of the power given it by statute, including the power to enact at any time reasonable by-laws.

36

4. BY-LAW AFFECTING REMEDY OF MEMBER. While, under the power to make reasonable by-laws, a mutual loan association organized under the act of 1851 cannot destroy a contract created between it and its members by the articles of association, to refund his dues to a withdrawing member, it may enact a by-law more or less affecting the remedy of the member; and existing members will be bound thereby, so far, at least, as they consented to the exercise of such a power when they became members.

5. BY-LAW REGULATING ORDER OF RE-PAYMENT OF DUES. Where the articles of association of a mutual loan association, organized under the act of 1851, provided that a withdrawing member should be repaid his dues when the necessary funds were collected, and the original by-laws empowered the directors to make "at any time" by-laws which did not interfere with the "articles of association," and declared that when enacted "they are equally binding upon all stockholders, as by them subscribed," *held*, that a subsequent by-law, to the effect that withdrawing members should be paid in the order of the presentation of their applications, was a reasonable regulation and binding upon all members alike, including those who had become members before its adoption.

*Engelhardt* v. *Fifth Ward P. D. S. & L. Assn.* (5 Misc. Rep. 518), reversed.

(Submitted January 15, 1896; decided January 28, 1896.)

APPEAL from judgment of the General Term of the Superior Court of Buffalo, entered upon an order made June 12, 1893, which reversed a judgment in favor of defendant entered upon a decision of the Municipal Court of Buffalo.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Henry W. Brendel* for appellant. The articles of association adopted and filed by the defendant gave it its corporate existence, and were a binding contract between the corporation and its shareholders. (Laws of 1851, chap. 122; *Livingston* v. *Lynch*, 4 Johns. Ch. 573; *M. Nat. Bank* v. *Schenectady Bank*, 78 Hun, 90; *Clearwater* v. *Meredith*, 1 Wall. 25.) The objects for which the association was organized demonstrate that a member's rights to withdraw the amount of money paid in by him depends upon contingencies. (2 Am. & Eng. Ency. of Law, 634.) The necessary funds not being on hand at the time the plaintiff began this action, he cannot succeed in forcing a payment of the amount which he paid on

his share. (*T. H. L. & B. Assn.* v. *Kerr,* 13 S. W. Rep.
1020 ; *Brett* v. *M. I. B. Society,* L. R. [1 Q. B. 1894] 367 ;
*Barnard* v. *Tomson,* L. R. [1 Ch. 1894] 374 ; *Wolfe* v. *C.
A. S. A. & L. Assn.,* 75 Hun, 201 ; *Schout* v. *C. A. S. A. &
L. Assn.,* 11 Misc. Rep. 454 ; Thompson on Building Assns.
64, 68 ; *State* v. *R. F. Assn.,* 45 Minn. 154 ; *N., etc., Assn.*
v. *Hubley,* 34 Leg. Int. 6.)

*Benjamin F. Folsom* for respondent. The plaintiff
became a creditor of the defendant association one week
after he gave the defendant notice of his intention to with-
draw. (*U. S. Building & Loan Association* v. *Silverman,*
85 Penn. St. 394.) The words of section 10, article 4 of ·
defendant's articles of association, " will be refunded to them
when the necessary funds are collected," are no restriction on
the plaintiff's rights as a creditor. (*U. S. B. & L. Assn.* v.
*Silverman,* 85 Penn. St. 394; Endlich on Building Assns.
§§ 136, 137, 141–143, 266 ; 50 Md. 583 ; 93 Penn. St. 308.)
There is no distinction in principle between a case where the
statute provides for withdrawal and one where the statute
provides that the articles of association shall make provision
for this right. (Laws of 1851, chap. 122, § 2.) The by-law
or resolution of the defendant relative to the order of with-
drawals was void as to this plaintiff, its effect being to alter
his rights under the articles of association. (*Holyoke Assn.*
v. *Lewis,* 1 Col. App. 127 ; *Wolfe* v. *C. A. S. A. & L. Assn.,*
75 Hun, 202.)

ANDREWS, Ch. J. The defendant is a saving and loan asso-
ciation, organized February 25, 1890, under the act, chap.
122 of the Laws of 1851, entitled " An act for the incorpora-
tion of building, mutual loan and accumulating fund associa-
tions," and acts amending the same. Its general purpose was
to encourage small savings, and to accomplish this purpose it
was provided in the articles of association that the member-
ship should consist of persons who should subscribe for one or
more shares of one hundred dollars each, to be paid for in
weekly payments of ten cents on each share, and each member

was entitled to a loan to the amount of the share or shares held by him out of any money in the treasury of the association, secured by mortgage, and in case of a loan an additional weekly payment of ten cents a share, called interest, was to be paid by the member securing the loan, to continue until the payments on the shares and of interest should cancel the loan. The association had no paid-up capital, and its only resource for paying the expenses of management and for making loans was the small weekly payments expected to be made by members and premiums on loans. A member not taking a loan, when his share or shares were fully paid up by the aggregate of the weekly payments, was entitled to surrender his stock and receive from the association the amount thereof. But the articles of association accorded to non-borrowing members the further right to withdraw from the association at any time on one week's notice, and in case of withdrawal it was provided as follows: "The dues actually paid in, together with such accrued profits as the directors may deem prudent for the interest of the association, will be refunded to them when the necessary funds are collected. Members who wish to withdraw have preference to those wishing to procure loans." The plaintiff was a member of the association and a subscriber for twenty shares of its stock, and up to the 4th day of October, 1892, had paid weekly payments thereon, amounting in all to $189.00. On that day he filed his application to withdraw the amount paid in by him. Prior to that day seventy-eight members had also filed their applications to withdraw the amounts severally paid in by them. The applications were entered in a book of the association provided for that purpose in the order of presentation. The prior applications aggregated $8,500. The association proceeded to pay them out of collections made, in the order of presentation and up to the time of the commencement of this action had paid the sum of $6,671.74, exhausting by such payments all the money then in its treasury. It had outstanding loans to the amount of $21,857. The amount owing the plaintiff not having been paid, this action was brought to recover the sum

of $189.00, it being an ordinary action as upon a debt presently due and payable..

It seems to be very plain that the clause in the articles of association, that the dues paid by withdrawing members "will be refunded to them when the necessary funds are collected," operated as a qualification of the liability of the association to withdrawing members. It was essential to the practical working of the scheme and purpose of the organization. The association, if the plan was followed, could have no assets of any considerable amount available for immediate re-payment of dues paid in by withdrawing members. It was not a moneyed corporation in any proper sense, and would not in the ordinary course of its business have assets readily convertible into money. Its assets would be represented in the main by loans to members on mortgages payable in small weekly payments. If no restriction existed preventing withdrawing members from immediately maintaining actions to recover their dues and enforcing judgments obtained, it is evident that this and similar associations would have a precarious existence. They would be in peril at almost any moment to have their operations arrested and to be thrown into a receivership by the conjoint action of a few withdrawing members. The beneficial purpose of the statute for the encouragement of small savings would be frustrated and the assets of the association subjected to costs and expenses which would seriously impair the general fund contributed by the members.

The articles of association which showed the scheme of the organization, and defined the obligation of the association and the rights of members, are binding upon each member thereof. They establish the relation between the association and the stockholders and constitute a contract between them. The association only bound itself to return the dues owing to a withdrawing member "when the necessary funds are collected." The plaintiff knew the probable resources of the association when he became a member and by subscribing the articles consented that the payment by members should be

invested in mortgages payable in small weekly payments. He does not stand in the position of a general outside creditor. He paid his dues and although by withdrawing he has ceased to be a member of the association, his right to receive them back is measured by the contract between him and the association. There can be no doubt we think that the condition that the association should refund " when the necessary funds are collected," was a material and substantive part of the obligation assumed by the association, and that it constitutes a good answer to the suit of a withdrawing member, that neither at the time that he withdrew, nor subsequently, before the action was brought, were there in the treasury of the association any funds collected, out of which the claim could be paid. We of course eliminate any element of bad faith, for this is not claimed, nor is it the case of an association which has discontinued its business or become insolvent. We need not consider what effect these or other facts might have upon the legal remedies of a withdrawing stockholder.

There is another question raised, respecting the right of the association to establish a by-law that withdrawing members should be paid in the order in which their applications were filed with the association. Such a by-law was enacted in the fall of 1891, after the plaintiff had purchased his stock, but, so far as appears, before any member had withdrawn or any withdrawals were in contemplation. It is claimed in behalf of the plaintiff that his rights could not be prejudiced by the enactment of such a rule of preference after he had become a member. It appears that when the plaintiff withdrew there was money in the treasury which was subsequently applied to the payment of dues to members whose withdrawals were filed at an earlier date than the withdrawal of the plaintiff.

The power to make reasonable by-laws consistent with its charter inheres in every corporation. Associations formed under the act of 1851 are declared therein to possess certain powers given to corporations by the Revised Statutes in tit. 3, ch. 18, pt. 1, among which is the power to "make by-laws not inconsistent with any existing law for the management of its

property and the regulation of its affairs," and by the express terms of the act itself power is conferred on associations formed under it to make " such provisions as shall be necessary for the convenient and effective transaction of the business thereof." The member of an association accepts membership with notice of the powers thus conferred. He is subject not only to regulations existing when he becomes a member, but to such as may be enacted from time to time by the association within the scope of the power given by the statute. It may be admitted that the association could not under this power destroy the contract between it and the member. But the contract made was in law subject to the power of the association to enact at any time reasonable by-laws. It would not be reasonable to extend this power so as to authorize the association by a subsequent by-law to change the essential character of an antecedent agreement between a member and the association, as for example, that a withdrawing member should not be re-paid his dues. But a by-law more or less affecting the remedy of the shareholder may be passed, and existing members will be bound, so far at least as they consented to the exercise of such a power when they became members. The recent English cases of *Wilson* v. *Miles Platting Building Society* (L. R. [22 Q. B. Div.] 381, note); *Rosenberg* v. *Northumberland Building Society* (id. 373), and *Bradbury* v. *Wild* (L. R. [1 Ch. Div. 1893], 377), are quite full upon this point. We think the by-law enacted in the present case, that withdrawing members should be paid in the order of the presentation of their application, was a reasonable regulation and bound the plaintiff, although enacted after he became a member. There is nothing in the articles of association forbidding, directly or by implication, the enactment of such a by-law. It gave no preference to any named stockholder over others. The plaintiff was at liberty at any time to withdraw and make his application for re-payment, but he saw fit to defer doing so until after many others had preceded him. The association, by enacting the rule, did not deny the plaintiff's right to be paid out of collections, but for con-

venience enacted a rule that those who first applied should be first paid, and this, we think, it was competent for the association to do, and that when enacted the rule was binding upon all members alike. The by-laws originally enacted empowered the board of directors to make "at any time" by-laws which do not interfere with the "articles of association," and further declared that when enacted "they are equally binding upon all stockholders, as by them subscribed." The by-law in question was not an interference with the articles of association.

The authorities upon the question herein considered are not altogether harmonious. The case of the *U. S. Building and Loan Association* v. *Silverman* (85 Pa. St. 394) may be said to be adverse to the view that the plaintiff could not maintain an action until there were funds collected applicable to the payment of his claim. On the other hand, the cases of *Brett* v. *Monarch Investment Building Society* (L. R. [1 Q. B. Div. 1894] 367); *Barnard* v. *Tomson* (L. R. [1 Ch. Div. 1894] 374); *Heinbokel* v. *National Saving, Loan and Building Assn.* (58 Minn. 340), and *Texas Homestead Building & Loan Association* v. *Kerr*, 13 S. W. Rep. 1020), tend to support the opposite conclusion, and rest, we think, upon the better reason.

The judgment of the General Term should be reversed and that of the Municipal Court of Buffalo should be affirmed, with costs.

All concur.

Judgment accordingly.