## HALE v. PHILLIPS.

Opinion delivered October 27, 1900.

1. Building and Loan Association—Insolvency—Maturity of Loans.— Upon the insolvency of a building and loan association loans made to members as advancements upon their shares, with interest, immediately become due and collectible. (Page 387.)

2. Same—Borrower's Account.—On foreclosure of a mortgage given by a borrowing member of an insolvent building and loan association, the member should be credited with interest and premiums paid by him, but not with dues, for as to the latter he must await the period of final distribution. (Page 389.)

3. Same—Offset.—In a suit by a foreign receiver of an insolvent building and loan association to foreclose a mortgage given by a borrowing member, the latter is not entitled to offset the present value of his stock, as such value cannot be ascertained until the final account of the receiver is filed in the action in which he was appointed. (Page 391.)

Appeal from Sebastian Circuit Court in Chancery.

Styles W. Rowe, Judge.

### STATEMENT BY THE COURT.

The facts in this case are correctly stated in appellant's brief as follows:

"The American Building & Loan Association was a Minnesota corporation, duly organized under the laws of the state of Minnesota to do a building and loan business. Its name was

afterwards duly changed to the American Savings & Loan Association.

"The laws of Minnesota provide that premiums taken for loans by a building and loan corporation should not be treated as interest, nor render such association amenable to the laws relating to usury. The laws of Minnesota further gave building and loan associations authority to provide by by-laws in what manner applications and bids for loans should be received, and who should be entitled to loans. It is also provided by the laws of that state that the note given to evidence a loan to a building and loan association should be accompanied by a transfer and pledge of the shares of the borrower in the association, and that such shares should be held by the association as collateral security for the performance of the conditions of the note and mortgage.

"The general nature and business of this association was to assist its members in saving and investing money, and in buying and improving real estate, and in procuring money for other purposes and loaning and advancing, under the mutual building society plan, to such of them as may desire to anticipate the ultimate value of their shares from the funds accumulated by the monthly contributions of its stockholders, and also from such other funds as may from time to time come into its hands.

"On the 5th of April, 1889, James L. Phillips, of Fort Smith, made written application to become owner of thirty shares of the capital stock, of the par value of one hundred dollars per share, in said association, and on the 10th of April, 1889, the association issued to the said Phillips its certificate for thirty shares of its stock. By the terms of said certificate and the provisions of the by-laws of the association, the said Phillips agreed, and was obligated, to pay to the association, at his home office in Minneapolis, Minnesota, on or before the 10th day of each month, the sum of sixty cents per share as and for the monthly dues upon said stock, until the same should become matured and of the value of one hundred dollars per share. On the 6th of June, 1889, the said Phillips made an application to the association, in writing, for a loan or an ad-

vancement of $1,500, by way of anticipation of the value of thirty shares of stock at their maturity, and, in accordance with the laws of the state of Minnesota and the by-laws of said association, did make his bid for the privilege of securing said loan or advancement, and did bid the sum of $50 per share, or $1,500 as and for a premium for the privilege of obtaining such advancement. His proposition was accepted by the board of directors of the association.

"On the 19th day of July, 1889, in order to secure the payment of said advancement, and the continued monthly payment of interest on the payment of the same at the rate of six per cent. per annum, and the monthly dues on thirty shares of stock until the said stock should be matured and of the face value of $100 per share, and the surrender of said stock at its maturity, the said Phillips and his wife executed their bond to the association. The terms of that bond bind the said Phillips to pay to the association, at the home office at Minneapolis, Minnesota, on or before nine years from the date thereof, the sum of $3,000, together with interest on $1,500 at the rate of six per cent. per annum from the 19th of July, 1889, until paid, payable monthly; or to pay to the association at its home office the sum of eighteen dollars on the 10th day of each and every month as and for monthly dues on said thirty shares of the capital stock, which were assigned to the association as collateral security, and shall also pay all installments of interest aforesaid, and all fines, etc., until the stock becomes matured and of the face value of one hundred dollars per share, and then surrender the stock to the association. In either of which events the bond was to be void; otherwise, to remain in full force. The bond contained the other usual clauses in regard to the payment of fines, when in default; also for the payment of taxes and insurance upon the property secured." It was also stipulated in the bond in words as follows: "If at any time default shall be made in the payment of said interest, or the said monthly dues on said stock, for the space of six months after the same, or any part thereof, shall have become due, or if the taxes or assessments on the property mortgaged to secure the faithful performance of this bond be not paid when due, or if

the insurance policy or policies on said mortgaged property be allowed to expire without renewal, then, and in either such case, the whole principal sum aforesaid shall, at the election of said association, its successors and assigns, immediately thereupon become due and payable, and the sum of nineteen hundred and forty-four ($1,944) dollars, less whatever sum has been paid said association as and for monthly dues on said thirty (30) shares of said capital stock, at the time of said default, may be enforced and recovered at once as liquidated damages." At the same time Phillips and wife executed a mortgage to the association to secure the due performance of the bond. The mortgage is in the usual form.

After this the association became insolvent. "On the 14th of January, 1896, at the suit of the attorney general of the state of Minnesota, the assets of the association were placed in the hands of a receiver. The case was taken by appeal to the supreme court of that state, and the decision of the lower court was affirmed, and it was adjudged that the association was insolvent. On the 18th of June, 1896, William D. Hale was appointed permanent receiver of the association."

Until the insolvency of the association Phillips promptly paid the interest and dues he was owing. Up to the time of the appointment of the receiver he had paid $1,440 as dues, and the sum of $557.50 as interest.

By leave and under the direction of the district court of Hennepin county, Minnesota, from which court the receiver derived his authority, and in which court the receivership is pending, William D. Hale, in his capacity of receiver, brought this action, in the Sebastian circuit court for the Fort Smith district, against James L. Phillips and his wife, Gussie B. Phillips, to recover the $1,500 and interest thereon at the rate of seven per cent. per annum from the 19th day of July, 1889, less the $577.50, with the said rate of interest upon the several payments of interest, and to foreclose the mortgage.

At the time of the appointment of the receiver and the institution of this suit, the association had no creditors, and owed no debts, in the state of Arkansas.

The circuit court found that this case is governed by the

rule announced in *Roberts* v. *American Building & Loan Association*, 62 Ark. 572, and found that, according to this rule, the defendants were indebted to the plaintiff in the sum of $613.20, and rendered judgment in his favor against them for that amount, and ordered the mortgage foreclosed to pay the same; and the plaintiff appealed.

*Hill & Brizzolara*, for appellants.

*Hay & Van Campen*, of Minneapolis, Minn., of counsel.

The trial court erred in applying to this case the rule in 62 Ark. 572. That case announces the rule where the association is a going concern, and a stockholder makes default. But in this case the association is insolvent, and a different rule must be applied. 77 N. W. 1010; 115 Pa. St. 273; 38 Atl. 643. The contract is terminated by the insolvency of the association, and it and its members became equally in default. Hence the rules for determining the amount due under contract are inapplicable. 36 S. W. 810; 38 S. W. 483; Thomp. Bldg. Assns. §§ 171, 297; 4 Am. & Eng. Enc. Law (2d Ed.) 1081; Endl. Bldg. Assns. § 523. The payments of dues by a borrowing stockholder are made as payments on his stock, and not as partial payments of the loan to him. *Cf.* 56 Ark. 335. Three rules exist for determining how to apply payments of a borrowing stockholder, after insolvency of the association: (1) It is the rule of the federal courts that the borrower is to be allowed credit for unearned premiums up to the estimated maturity of stock, but otherwise to be treated as any other stockholder. 86 Fed. 491; 61 Fed. 491. (2) In a minority of the states the rule is "that the relation between the association and the borrowing member has been changed by circumstances to the one subsisting between the ordinary debtor and creditor; and that the borrowing member is to be charged with the amount actually received by him, with interest at the legal rate to date, and credited with all payments made, whether by way of dues, interest, or premium, according to the rules governing partial payments." 4 Am. & Eng. Enc. Law (2d Ed.), 1081; 64 Med. 338; S.C. 14 Am. & Eng. Corp. Cas. 649; Thomp. Bldg. Assn. (2d Ed.) p. 344, n. 3; 48 Ga. 445. (3) In a majority of the

states the rule is to credit the borrower with all of the interest and none of the dues, leaving him to receive from the insolvent corporation the dividend upon his stock on account of his payment of dues. 115 Pa. St. 273; 20 S. W. (Tenn.) 430; 38 S. W. (Ky.) 483; 36 S. W. (Tex.) 810; 38 Atl. (N. J.) 643; 40 N. W. (Ind.) 694; 41 N. E. (Ohio) 139; 80 N. W. 120. For cases approving the action of the receiver in applying the "majority rule," see: 77 N. W. 1010; ib. 1006; 80 N. W. 120; ib. 148. The contract is a Minnesota contract; and should be construed under the laws thereof. 33 Ark. 645; 35 Ark. 52.; 46 Ark. 50; 60 Ark. 269; 54 Ark. 556.

*Winchester & Martin*, for appellee.

The contract, if enforced at all, must be enforced according to its terms, and foreclosure can not be had for sums already paid. 20 Am. & Eng. Enc. Law, 242, 243 and 244. The relation of debtor and creditor does not exist. 1 Am. & Eng. Enc. Law, 643. The decree could not go further than to hold the borrowers for the difference between what they have paid and the sum named in each bond as liquidated damages. 35 Me. 535; 186 Pa. St. 150; 83 Ala. 420; 30 Ark. 396; 18 Am. & Eng. Enc. Law, 237. Appellees should be charged with the amount of money received and interest thereon at six per cent. from the time it was received, and credited with interest and dues paid on stock, including premium. 29 L. R. A. 127; 48 Ga. 448; 64 Md. 338; 105 Mass. 254; 40 Md. 172; 58 Md. 279: 48 Md. 452; 51 Md. 198; 29 L. R. A. 133; 78 N. C. 188; 26 N. J. Eq. 351; 8 App. Cas. 235. Appellees are entitled to credit for the dues paid on the shares of stock which represent the premiums. 20 S. W. 430; 37 S. W. 216; 46 S. W. 452.

BATTLE, J., (after stating the facts.) "Mutuality," it has been said, "is the essential principle of a building association." Its principal object is to raise a fund to advance to those of its members who may desire to borrow money. For this purpose each member subscribes for the number of shares in its stock he desires, and at stated times and short intervals pays upon the same small sums of money, called dues. He continues

these payments until they, with the profits derived from other sources, after the deduction of expenses and losses, equal the face value of the stock, when the stock is matured. The shares are then called in, and the owner receives the face value thereof in cash, unless he has received an advance on his shares, and in that event his obligation based upon such advance is cancelled. Before the maturity of the stock the dues paid are usually advanced to the member who will relinquish to the association the prospective dividend to be paid upon his shares at their maturity in exchange for the lowest present cash payments per share, he agreeing to pay the dues on the shares and interest on the sum advanced "until the association is able to divide, to each share of the stock held by the members, the par value of those shares as fixed in the charter." In other words, he agrees to pay the dues and interest until his shares reach their par value, in consideration of the amount advanced to him before that time. The dues and interest so paid contribute to create the common fund with which the stock of the association is matured and paid.

The member, who has received the advance on his stock still holds his interest in the common fund and in the management and success of the association. He is as much interested as the members who have received no advance. All are bound in proportion to the amount of their shares for the payment of the expenses and losses of the association. The latter class of members is interested in the increase of the common fund because upon it depends the payment of its shares; and the former is interested because upon it depends his discharge from the obligation to pay dues and interest until the maturity of his shares. *Eversmann* v. *Schmitt*, (Ohio) 41 N. E. Rep. 139.

The duty of all the members of both classes to pay dues until the maturity of their shares depends, however, upon the solvency of the association. The insolvency of the company subjects it to being wound up by judicial proceedings at the instance of any of its members; and when insolvency occurs, and such proceedings are instituted, the association becomes unable to carry out its contracts with its shareholders; its stock

can never be matured; its members are relieved of the further payment of dues on their shares; and the further performance of its executory contracts is placed beyond its power.    In such a state of affairs nothing remains but liquidation; and so much of the amount advanced to a member, and interest thereon, as has not been paid immediately becomes due and collectible. This is a result of the necessity of the situation.    How shall this amount be ascertained?    See *Weir* v. *Granite State Provident Association*, 38 Atl. 643; *Knutson* v. *Northwestern Loan & Building Association*, 67 Minn. 201; *Rogers* v. *Raines*, 38 S. W. Rep. (Ky.) 483; *Strohen* v. *Franklin Savings & Loan Association*, 115 Pa. St. 273; *Hale* v. *Cairns*, 77 N. W. Rep. (N. D.) 1010; and Thompson on Building Associations (2d Ed.) §§ 171, 297, and cases cited.

He, of course, should be charged with the amount he actually received, with legal interest thereon.    The question is, with what should he be credited?    The insolvency of the association and the consequential winding up of its affairs place him in a dual relation to the association, which is that of a borrower whose debt is due, and of a stockholder.    The dues paid by him on his shares are a part of its capital stock, and belong to all of its members alike, and should bear their proportionate part of the losses and expenses of the corporation. In this way he is made to bear his part of the burden.    Being liable in this manner, it is evident that he is not entitled to receive, or be credited with, anything on account of dues paid until the expenses and losses are ascertained and deducted and his proportion of the assets of the company is determined. Were it otherwise, and he entitled to be credited with dues on the amount of his indebtedness for advances, it is evident that he would receive the value of his shares, so far as that value is the result of dues, while the members who have received nothing would be compelled to bear all the losses.    This would be subversive of that mutuality, equality and fairness upon which building associations are supposed to be based.    It follows, then, that, as to his proportionate . part of the assets of the company, he must await the period of final distribution. See cases above cited, and *Rogers* v. *Hargo*, 20 S. W. Rep.

(Tenn.) 430; *Price* v. *Kendall*, 36 S. W. Rep. (Texas) 810; *Wohlford* v. *Association*, 140 Ind. 662; *Phelps* v. *American Savings & Loan Association*, 80 N. W. Rep. 120.

What we have said of dues does not apply to interest and premiums actually paid. The latter were paid solely on account of the advance. The member who paid the same did so in consideration of the complete execution of his contract with the association. That consideration, by reason of the insolvency of the company and consequent proceedings, has failed, and he, as to the advance, has become a borrower, whose debt therefore is due, and the interest and premium paid should be credited to him on such debt. The members who have received no advances, having paid no premiums and interest, are not entitled to share in those paid by the member who has. See cases cited above.

The rule adopted and followed in *Roberts* v. *American Building & Loan Association*, 62 Ark. 572, does not apply to this case. The object of the rule in that case was to ascertain the amount due when the member who received the advance was in default aud the association was a going concern. In this case the reverse is true, and all the stockholders are in default by reason of the insolvency of the association. *Weir* v. *Granite State Provident Association*, 38 Atl. (N. J.) 643; *Price* v. *Kendall*, 36 S. W. Rep. (Ky.) 810. For the same reason the penalty that the bond sued on authorizes the association to sue for and recover cannot be enforced. The condition upon which the right to it depends has never occurred, and the association has never elected to sue for it.

In the case before us the appellee, James L. Phillips, bid fifty per cent. of the face value of his shares for the advance received by him from the association. The monthly payment of sixty cents upon each share was paid to and received by the association as dues, according to the terms of his bond. When the advance was made, he, in consideration thereof, agreed to pay the monthly dues on his stock until its maturity. In this he undertook to perform what he agreed with the association, and thereby indirectly with its members, to do when he became a fellow stockholder. His duty as to his shares was not changed by the advance. When his stock matured by the performance

of his contract, he was to receive all the benefits accruing. All the sums paid on the stock were dues; the whole of each and every sum so paid was a due as much as any part of any of them. It is, therefore, evident that, in the equitable adjustment of the rights of all parties made necessary by the insolvency of the association, he should be credited with the whole of the sixty cents per share per month on his account as a shareholder, and not as a borrower. *Hale* v. *Cairns*, 77 N. W. Rep. (N. D.) 1010.

Appellant does not seek to recover any premium in this action.

It is said by appellee, James L. Phillips, that he is entitled to offset the present value of his stock against any judgment that may be recovered against him. That cannot be done in this action. The amount due on the stock cannot be ascertained until the final account of the receiver is filed in the action in which he was appointed. This court has not sufficient information to enable it to ascertain the amount. As to it, appellee must await the period of final distribution of the assets. *Rogers* v. *Raines*, 38 S. W. (Ky.) 483; *Weir* v. *Granite State Provident Association*, 38 Atl. (N. J.) 643.

The decree of the circuit court is therefore set aside, and the cause is remanded, with instructions to the court to enter a judgment in accordance with this opinion and to foreclose the mortgage to pay the same, and for other proceedings.

RIDDICK, J., dissents.