COURTNEY *v.* REAP.

Opinion delivered July 6, 1931.

*Carmichael & Hendricks,* for appellant.

*J. S. Utley* and *E. G. Shoffner,* for appellee.

MEHAFFY, J. On December 3, 1930, the State Bank Commissioner took over the Citizens' Building & Loan Association of Little Rock, Arkansas, an insolvent building and loan association. The bank commissioner brought

suit in the Pulaski Chancery Court alleging that the officers and directors had made illegal and unlawful loans without taking proper security. On December 17, A. J. Reap was appointed receiver by the Pulaski Chancery Court for the Citizens' Building & Loan Association.

On March 19, 1931, the appellant, Ethel Courtney, filed an intervention in the Pulaski Chancery Court, alleging that about nine years ago she borrowed $4,000 from the building and loan association. She alleged that she intended to pay this back in installments, and did not intend to buy stock in the association. She received a little less than $4,000 from the association, and paid $53.35 monthly for 108 months, the total payments being $5,761.80. She alleged that the receiver refused to credit her with any amount whatever, and that she was entitled to an offset in satisfaction of the loan.

She also alleged that she paid more than 10 per cent. interest, and that the loan was usurious and void on that account.

Answer and cross-bill was filed by the receiver. It was alleged at the time that appellant borrowed the $4,-000 she purchased 160 shares of stock of the par value of $25 per share, and that, as collateral security for the money borrowed, appellant hypothecated and pledged to the association the shares of stock; that she at the time executed and delivered a bond to the association and a mortgage on lot 5 in block 3 of W. B. Worthen Addition to the city of Little Rock, Arkansas.

The receiver asked judgment against the appellant, and that the real estate included in the mortgage be sold for the payment of said judgment.

The case was tried in the chancery court on an agreed statement of facts. The court dismissed the intervention of appellant and decreed a foreclosure. The appellant had paid a total of $5,761.80.

We do not deem it necessary to set out the agreed statement of facts because, as stated by appellant, the main question is the right of set-off, or whether the ap-

pellant is entitled to any credit for dues paid, on the value of her stock against the loan.

It is conceded by appellant that she is not entitled to a set-off unless the cases of *Hale* v. *Phillips*, 68 Ark. 382, 59 S. W. 35, and *Taylor* v. *Clark*, 74 Ark. 222, 85 S. W. 231, should be overruled.

Appellant calls attention to the rules adopted by the different courts, but it would serve no useful purpose to discuss these rules or to decide whether one or the other is more equitable and just because the cases referred to establish the rule in this State, and, the rule having been established and followed for many years, we think it should not now be departed from. We do not think the former decisions should be overruled.

The facts in the case of *Hale* v. *Phillips, supra,* are the same as in this case, so far as this question is concerned, and the court there said, speaking of the principle of the building and loan association: "Its principal object is to raise a fund to advance to those of its members who may desire to borrow money. For this purpose each member subscribes for the number of shares in its stock he desires, and at stated times and short intervals pays upon the same small sums of money, called dues. He continues payments until they, with the profits derived from other sources, after deduction of expenses and losses, equal the face value of the stock, when the stock is matured. The shares are then called in, and the owner receives the face value thereof in cash, unless he has received an advance on his shares, and in that event the obligation based upon such advance is canceled. * * * The member who has received the advance on his stock still holds his interest in the common fund and in the management and success of the association. He is as much interested as the members who have received no advance. All are bound in proportion to the amount of their shares for the payment of the expenses and losses of the association. The latter class of members is interested in the increase of the common fund because upon it depends the payment of its shares; and the former is interested be-

cause upon it depends his discharge from the obligation to pay dues and interest until the maturity of his shares."

Whether one who subscribes for stock is a borrower or not really makes no difference. If one subscribes for stock and is not a borrower, he makes payment on the stock in exactly the same way and the same amount that one does who has subscribed for stock and pledged it as collateral security to pay the loan.

The non-borrowing stockholder may pay dues for years, and if the association becomes insolvent and the stock is worthless, he loses all he has paid. The same is true of the borrowing member. He pays on his stock, and, if the association becomes insolvent, he loses all he has paid on his stock, but in addition to paying on stock, the borrowing member pays interest on the money he has borrowed, and if he has paid no more than the interest on the loan, he of course still owes the entire amount of his loan. Both the borrower and the investor lose all they have paid on the stock if the stock becomes worthless. There is no difference between the situation of the borrower and the investor as to the stock.

In case of insolvency, if the stock is worthless, the borrower should be charged with the amount advanced to him, together with the interest agreed on, and should be credited with all the amount he has paid on the loan, but he should not be credited with the amount paid on the stock. He owes the debt as a borrower, and as a stockholder, if the stock becomes worthless, he loses what he has paid on the stock. So far as the stock is concerned, and the payments thereon, he bears his part of the burden in the same way that the non-borrowing stockholder does.

As said in *Hale* v. *Phillips, supra*: "Were it otherwise, and he entitled to be credited with dues on the amount of his indebtedness for advances, it is evident that he would receive the value of his shares, so far as that value is the result of dues, while the members who have received nothing would be compelled to bear all the losses."

In other words, if the payments made on stock by the borrowing members were applied on the debt, the borrowing member would receive for his stock all that he had paid on the stock if it were worthless, and the non-borrowing member would lose everything he had paid on his stock.

The rule adopted by this court requires each to bear his part of the burden, and, so far as the payments on stock are concerned, each stockholder, whether he is a borrower or not, is treated like every other stockholder. The borrowing member's duty as a stockholder is not changed because he borrows money from the association.

The court said in a later case: "The court is of the opinion that the rule adopted in *Hale* v. *Phillips, supra,* and here followed, more nearly conserves than any other the principles of equality, mutuality and fairness, upon which building and loan associations are supposed to be founded." *Taylor* v. *Clark,* 74 Ark. 220, 85 S. W. 232.

The rule adopted in *Hale* v. *Phillips, supra,* is followed here, and the decree is therefore affirmed.

Mr. Justice McHANEY not participating.