UNION SAVINGS BUILDING & LOAN ASSOCIATION *v.*
HENDERSON.

4-3817

Opinion delivered April 8, 1935.

810

*John W. Nance* and *Fred L. Purcell,* for appellant.

*Earl Blansett, George Blansett* and *W. Maurice Buttram,* for appellees.

SMITH, J. Appellant is a building and loan association organized and operating under the laws of this State. Appellees applied to the association on October 30, 1929, for a loan of $7,000, which was consummated on December 2, 1929, in accordance with the plan under which appellant and other similar associations operated. Under this plan appellees gave appellant a mortgage on certain real estate in the city of Rogers securing a note for the $7,000 borrowed, due forty-four months after date, and bearing interest until maturity at nine per cent., and after maturity at ten per cent. until paid. At the same time, and as a part of the same transaction, appellees purchased from appellant Installment Savings Certificate No. L-2185, the recitals of which are to the following effect: In consideration of the payment to appellant "of $140, payable monthly in advance on the first day of each and every month for 44 consecutive months from the date hereof," the appellant association promised to pay, upon surrender of the certificate by the owner thereof, "the sum of $7,000, being the matured value of this certificate." Appellees agreed to pay $49 in addition as interest on the loan, so that the monthly payments amounted to $189. The certificate provides that, should the monthly payments at any time be three months in arrears, it should automatically be canceled, and the owner thereof should receive credit for the withdrawal value of the certificate on the date of the last payment, which was payable upon surrender of the certificate properly indorsed.

It was contemplated that, if all the payments of $189 each were made when due, the certificate would then have a value equal to the amount of the original loan, and might, at the option of the borrower, be used in payment of the loan, thereby canceling the mortgage on the land.

Appellees made without default thirty-nine continuous payments of $189 each, the last being made on February 15, 1933, covering the payment due for that month. At that time appellees lacked only five payments of $189 each of having matured the certificate, and, if they had been made, the stock certificate would have been canceled and applied to the loan, and the $7,000 note surrendered, and the debt extinguished and the mortgage canceled, had the borrowers so elected.

Some time in February, 1933, a question arose as to the ability of appellant association to meet the demands of creditors at the end of that month. The secretary of the association testified that: "It was fast beginning to be a question to prove the association to be solvent, and the board of directors voted to go into liquidation." Appellees were not then in default in their payments.

The association made application to the Bank Commissioner for authority to liquidate under the provisions of act 54 of the Acts of 1933 (Acts 1933, page 148). This authority was granted, and the Bank Commissioner ordered the association to credit each borrower with the withdrawal value of his certificate. The cash surrender value of appellees' stock at that time was $5,621.35 after paying interest on the loan to that date, so that the net balance due the association was the difference between the amount of the original loan of $7,000 and the cash surrender value of $5,621.35, or $1,378.65. Upon appellees' failure and refusal to pay this balance, this suit was begun July 7, 1933, to foreclose the mortgage given to secure it, together with interest thereon from the date on which the association was directed to credit the withdrawal value of appellees' certificate on their loan.

Act 54 of the Acts of 1933 is an act to provide for and to prescribe the conditions and regulations under which building and loan associations may voluntarily liquidate their affairs. It provides that the board of directors of an association shall pass a resolution providing for liquidation, and shall furnish the State Bank Commissioner with a copy thereof, together with a statement of the assets and liabilities of the association duly verified. Upon approval of the resolution, and of the

plan of dissolution it is made the duty of the Bank Commissioner to make an order that "such association shall not issue any further stock or certificates, nor make any further loans, and all of its income and receipts in excess of the actual expenses of such liquidation shall first be applied towards the discharge of its liabilities for borrowed money, and the officers of such association, under the direction of its board of directors, and the supervision of the Bank Commissioner shall then proceed with such liquidation by reducing the assets of such association to cash and distributing the same among its shareholders and certificateholders in proportion to the withdrawal value of their respective holdings, as is existing at the date of the passage of such resolution for voluntary liquidation."

There appears to have been an exact and literal compliance with the provisions of this statute.

It was the view of the court below that, inasmuch as appellees had made their payments without default, they should have the right to complete their remaining payments—five in number—with the interest thereon at ten per cent. from the due date of each payment to the date of the rendition of the decree. The sum thus adjudged to be due amounted to $1,082.70, and it was decreed that the mortgage be foreclosed in satisfaction thereof if the same was not paid within the time given for payment.

If only the interests of the association and the appellees were involved, this decree would be correct, but the interests of many others are involved, either as borrowers and investors or as creditors, and the rights and liabilities of all must be determined in accordance with the general plan under which the association was authorized by law to operate.

The rule to be here applied was stated in the case of *Courtney* v. *Reap*, 184 Ark. 112, 40 S. W. (2d) 785, where earlier cases on the subject were reviewed. The later cases of *Lacefield* v. *Taylor*, 185 Ark. 648, 48 S. W. (2d) 832, and *Home Bldg. & Savings Ass'n* v. *Clay*, 188 Ark. 943, 68 S. W. (2d) 103, are to the same effect.

In the case of *Courtney* v. *Reap*, *supra*, the facts were as follows: Mrs. Courtney borrowed $4,000 from a

building and loan association, and she purchased stock for that amount, which, when it matured, was intended to repay the loan, just as appellees did in the instant case. She made 108 monthly payments totaling $5,761.80, for which she prayed an offset against her loan. She was denied this right, and in so holding the opinion quotes from earlier decisions which had stated the principles upon which building and loan associations operate to this effect. The principal object of such associations is to raise a fund to advance to those of its members who desire to borrow money, and for that purpose each member subscribes for the number of shares of stock desired, and at stated times and at short intervals pays sums of money called dues. These payments continue until, with the profits derived from other sources, less operating expenses and losses, they equal the face value of the stock, when the stock is matured. The shares are then called in, and the owner receives the face value thereof in cash (unless he has received an advance on his shares), and in that event the obligation based upon such advance is canceled. If a loan had been made secured by a mortgage, the matured stock could be applied to its satisfaction and cancellation. Such was the plan and such the result where the plan was carried to final and successful termination. But such contracts were not individual and disassociated from other contracts. There is a mutuality in the plan which cannot be read out of it to accomplish what might otherwise appear to be an equitable result in a particular case. The opinion proceeds to say that the member who has received an advance on his stock still holds his interest in the common fund and in the management and success of the association, and is as much interested as is the member who had received no advance, as all are bound in proportion to the amount of their shares for the payment of the expenses and losses of the association, and that this is true because the latter class of members is interested in the increase of the common fund, for upon it depends the payment of its shares; and the former is interested because upon it depends his discharge from the obligation to pay dues and interest until the maturity of his shares. In view

of this mutuality of interest in the success of the plan of operation, it was pointed out that it makes no difference whether one who has subscribed for stock is a borrower or not, for, if one subscribes for stock, and is not a borrower, he makes payment on the stock in exactly the same way, and the same amount that one does who has subscribed for stock and pledged it as collateral security to pay a loan, as was done by appellees in the instant case.

The opinion in this case of *Courtney* v. *Reap, supra,* makes plain why this must be true to prevent a preference between the borrowing and the investing or non-borrowing member in the event adversity befalls and interferes with the plan. In that connection it was said that the non-borrowing stockholder may pay dues for years, and if the association becomes insolvent and the stock proves to be worthless he loses all he has paid, and that the same is equally true of the borrowing member. If the latter pays on his stock, and the association becomes insolvent, he loses all he has paid on his stock, but, in addition to paying on stock, the borrowing member pays interest on the money he has borrowed, and if he has paid no more than the interest on the loan he still owes the amount of the loan, and both the borrower and the investor lose all they have paid on their stock if it becomes worthless. In that connection the opinion quotes from the case of *Hale* v. *Phillips,* 68 Ark. 382, 59 S. W. 35, as follows: " 'Were it otherwise, and he (a borrowing member like appellees) entitled to be credited with dues on the amount of his indebtedness for advances, it is evident that he would receive the value of his shares, so far as that value is the result of dues, while the members who have received nothing would be compelled to bear all the losses'."

Upon the authority of this case of *Hale* v. *Phillips,* and the later case of *Taylor* v. *Clark,* 74 Ark. 222, 85 S. W. 231, it was said that this rule "more nearly conserves than any other the principles of equality, mutuality and fairness, upon which building and loan associations are supposed to be founded."

In the application of these principles it would necessarily follow that, if the appellant association were wholly

insolvent, appellees would lose all payments they have made on their stock, and would still owe the amount of their loan. But, fortunately, this is not true of appellant association. The stock which appellees had not fully matured has very substantial value, and the amount of that value was ordered credited upon appellees' loan which the mortgage upon the real estate secured. To allow appellees any greater credit would be to accord them a preference to which, under the opinions hereinabove cited, they are not entitled. The order of the Bank Commissioner, made pursuant to act 54 of the Acts of 1933, approving the resolution for the liquidation of the association adopted by the board of directors thereof, was made April 7, 1933, at which time the withdrawal value of the appellees' certificate was $5,621.35. When that value has been credited upon the loan, there remains due the sum of $1,378.65, upon which sum interest should be calculated from the date of that credit. We think it equitable, however, that this interest should be calculated at the rate of nine—and not at the rate of ten—per cent. per annum, because appellees were not in default in their payments before appellant association took steps for its voluntary dissolution.

The decree of the court below will therefore be reversed, and the cause remanded with directions to enter a decree in conformity with this opinion.