Republic Bond & Mortgage Company *v.* Sibley.

4-5510           129 S. W. 2d 236

Opinion delivered June 5, 1939.

R. W. *Robins* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*George F. Hartje,* for appellee.

McHaney, J. Tri-State Savings & Loan Association hereinafter called Association, was, at all times herein mentioned and until June 9, 1935, at which time it was adjudged insolvent and a receiver appointed, a building and loan association operating on the mutual plan. On June 4, 1932, it loaned appellees $1,500 for which they executed their joint promissory note, due May 1, 1943, with interest at 9 per cent. per annum, payable monthly on the first day of each month after date. Said note was secured by mortgage on installment savings certificate of the association, No. 6344, of the value of $1,500 when ma-

tured, and on certain real property in the city of Conway, Arkansas. Said mortgage provided for the payment of interest monthly and in addition a monthly sum to be applied to the maturity of said savings certificate, which, when fully matured, might be applied by appellees to the payment of said loan. The usual provisions for fore-closure in the event of default were also set out therein. Said installment savings certificate provided for the payment of $7.50 in advance on the first day of each month for 130 months, at which time the association would pay $1,500 upon presentation and surrender of the certificate.

In January, 1933, appellees purchased full paid certificate No. 1143, issued by the association in the sum of $1,500 from Union Trust Company of Little Rock at a price of $825 and in February, 1933, tendered same to the association, together with $90 in cash, in full settlement of their indebtedness to it, which offer was refused. Thereafter, on March 18, 1933, they brought suit to compel the association to accept said full-paid stock and tender in full satisfaction and to enjoin it from transferring or assigning said note and mortgage. A temporary injunction was so issued and has not been modified. On December 19, 1933, the association brought suit to foreclose its mortgage, payments being in default, and appellees answered renewing their offer to pay said indebtedness with said full-paid certificate and an additional sum sufficient to cover accrued interest.

On June 9, 1935, the association was judicially decreed to be insolvent, a receiver was appointed, and, for a valuable consideration, he sold the assets, including the note and mortgage of appellees, to appellant, who was made a party to both actions. These actions were consolidated. The case was submitted on an agreed statement of facts, substantially as above related and such other facts as may be hereinafter stated, and on certain oral testimony to the effect that the association had, prior to insolvency, permitted the witnesses and others to offset against their mortgage indebtedness to it full paid investment stock or certificates issued by the association and bought up at a discount by them for the purpose. Trial resulted in a decree for appellees on the ground that the

association had, by permitting others to off-set indebtedness or pay same with full-paid investment certificates, estopped itself to deny appellees the same right. The case is here on appeal.

To sustain this decree, appellees rely on the provisions of § 987 of Pope's Digest, being § 7 of act 236 of 1931, and estoppel. Said section is as follows: "Any borrower from a domestic Building and Loan Association which shall be in voluntary or involuntary liquidation or which has been legally declared insolvent, who, at the time of such liquidation or insolvency is indebted to the said association, shall be charged with the amount due on said loan and/or advance, and any other indebtedness due said association by such borrower, at the time of liquidation or insolvency, and shall be given credit on his loan and/or advance for the amount theretofore paid on his stock, bond, investment certificate, membership certificate, or other evidence of shares as the case may be, less any fees, fines or penalties due said association by such borrower."

Particular reliance is placed on that part of said section which says: ". . . and shall be given credit on his loan . . . for the amount theretofore paid on his stock, bond, investment certificate, membership certificate, or other evidence of shares as the case may be . . ." We agree with the trial court that this statute does not authorize the off-set contended for. This language refers to the investment certificate appellees applied for and received in connection with said loan and which was mortgaged or pledged to the association as security therefor. But for that statute, the amount paid on such investment certificate could not have been credited on said note. *Hale* v. *Phillips,* 68 Ark. 382, 59 S. W. 35; *Taylor* v. *Clark,* 74 Ark. 220, 85 S. W. 231; *Courtney* v. *Reap,* 184 Ark. 112, 40 S. W. 2d 785.

In *Lacefield* v. *Taylor,* 185 Ark. 648, 48 S. W. 2d 832, in commenting upon the effect of the above quoted statute, this court said: "The advantage of § 7, above quoted, to the borrowing member is apparent. It enables him to terminate his relation with the association without

loss, although it is insolvent. He is given full credit for all *dues paid,* and is required only to pay the difference between the total amount of dues paid and the amount of his loan. It is equally as apparent that this preference is given at the expense of the investing stockholder, as sufficiently appears from the opinion in *Courtney* v. *Reap, supra,* and the whole system of mutuality is destroyed." (Italics supplied.)

To hold that the borrowing stockholders could go out and buy full-paid investment stock or certificates at a discount or otherwise, and then off-set them against their debts to the association would be to extend the statute and further destroy "the whole system of mutuality."

In *Home Building & Savings Ass'n* v. *Clay,* 188 Ark. 943, 68 S. W. 2d 103, 98 A. L. R. 84, it was held that the holder of matured stock, which was converted into a certificate which promised to pay "upon thirty days' written notice, given after one year from the date hereof," a certain sum of money with dividends at 6 per cent. per annum, conditioned that said certificate shall be subject to the laws of Arkansas and the by-laws of the association, continued to be a stockholder and not a creditor of the association, which left the stockholder subject to the statutes and by-laws of the Association governing payment of withdrawals. It was also held that a by-law prohibiting application of over half of its monthly receipts to payment of withdrawals was applicable to fully paid-up stock certificates, and that a demand for payment could not be complied with in violation of such by-laws.

The above holding is applicable here. The association had a by-law similar, if not an exact copy of that in the Clay case, *supra.* The fully paid certificate purchased by appellees contained this provision on the face of it: "This certificate is issued subject to the provisions of the articles of incorporation and by-laws of the association and the privileges, terms and conditions printed on the back hereof, all of which are made a part hereof as fully as if set out in the face of this certificate." One of the conditions on the back thereof was:

"This certificate may be withdrawn at any time by giving thirty days notice. To protect the mutual interest of investors and borrowers alike, and to avoid the sacrifice of the securities, the association shall not be required, without the consent of the directors, to use more than one-half of the money received from monthly payments in any month, in payment of those withdrawing, and then in the order in which the certificates may have been registered upon the Association's books for withdrawal." Moreover, there is a positive statute regulating the matter (§ 988, Pope's Digest) as follows: "Credits on any or all classes of shares, stock or certificates, except guaranty permanent stock, in every building and loan association may be made withdrawable at such times and under such terms and conditions as the association in its by-laws may prescribe. Provided that it shall be unlawful for such by-laws to provide or prescribe, or for any association or any officer or any employee to promise or advertise that the association will pay applications for withdrawals on demand. Provided that at no time shall more than one-half of the monthly receipts of the association in any month be applicable to the payments of withdrawals for that month, except by consent of the board of directors. No member or certificate holder shall be permitted to withdraw, whose shares are pledged to the association as security, for a loan, unless at the same time such loans are fully repaid.

"Applications for withdrawals shall be paid in the order filed as fast as funds are available for that purpose as provided in this section. Provided further: That the amount of dividends or profits paid on such withdrawals shall not exceed the amount of dividends or profits apportioned or appropriated to the shares withdrawn."

So it will be seen that by both the by-laws of the association and the statute, neither the association nor its assignee, appellant, can be compelled to accept fully paid stock in payment of indebtedness due it by the borrower, as to do so would violate both.

We cannot agree with the trial court that the association estopped itself to insist upon enforcement of its by-laws, and certainly not upon the positive provision of statute. No matter how often it may have violated the law by permitting persons to obtain a preference by off-setting fully paid stock against indebtedness, out of turn, it could not be estopped to obey the law.

The decree will, therefore, be reversed and the cause remanded with directions to enter a decree in accordance with this opinion.