the New York rule, so called, has been modified so as to conform to the rule in England and in our federal court of last resort. We have discussed this question at such great length, because we have been unable to find any reported case in which it has arisen. Under the views above expressed, plaintiffs must be regarded as holders for value, whose title to the note in suit is unaffected by any existing equities between antecedent parties. Upon the uncontradicted evidence on that branch of the case, it was properly treated as a question of law.

The second question in the case may be very briefly disposed of. It is concededly a close question, upon the facts of this case, whether the plaintiffs exercised the "reasonable diligence" required by the statute in sending notice of dishonor of the note in suit to the defendant. But we think this question was properly submitted to the jury as a question of fact. Reasonable diligence is all that law requires. The law does not exact every possible exertion which might have been made to effect notice of the dishonor of the paper. Bank v. Darling, 91 Hun, 236, 36 N. Y. Supp. 153. What is reasonable diligence depends upon the circumstances of each case. In this case the plaintiffs were informed that the defendant was the proprietor of a milk route, which was, in fact, true. It appears that this route is in the village of Salamanca, and that defendant is in said village substantially every day. West Salamanca, although it has a separate post office, seems to be but a suburb of Salamanca. After receiving notice from the bank in Salamanca that the note had not been paid, the plaintiffs had until the evening of the following day in which to send notice to the defendant. The question of what is reasonable diligence must be determined with reference to what would have suggested itself as necessary, under the existing circumstances, to the man of ordinary prudence and intelligence. Plaintiffs were not called upon to assume that the note would not be paid at maturity. The acts done by the plaintiffs, supplemented by the failure to return the notice sent by them pursuant to the direction upon the envelope in which the notice was contained; and the denials by the defendant that he ever received such notice, and his proof that he received all his mail at West Salamanca, and none at Salamanca,—established conditions under which men might reach different conclusions upon the question whether the plaintiffs had exercised due diligence or not; and, therefore, we think it was a question for the jury. Defendant's motion for a new trial is denied, with $10 costs.

Motion denied, with $10 costs.

(37 App. Div. 340.)

SINTEFF v. PEOPLE'S BUILDING, LOAN & SAVING ASS'N.

(Supreme Court, Appellate Division, Fourth Department. February 3, 1899.)

1. BUILDING ASSOCIATIONS—ARTICLES AND BY-LAWS—AMENDMENT—RIGHTS OF SHAREHOLDERS.

Where the option given a shareholder of a building association by the original articles and by-laws, to withdraw the amount paid, with interest up to the time of application for withdrawal, is unconditional, an amend-

ment providing that only one-half the receipts shall be applicable to withdrawals is not binding on existing shareholders, because it affects not the remedy merely, but the contract.

**2. SAME—WITHDRAWALS—LOSSES.**

Where, by the terms of a certificate of stock issued by a building association, it unconditionally agrees, at the holder's option, after three years, to pay him the amount received thereon, it cannot reduce his claim on withdrawal by charging his stock with a share of losses on a scaling of its assets after the notice of withdrawal.

**3. SAME—RIGHT TO INTEREST.**

Where the amount due on withdrawal of stock of a building association is wrongfully withheld, and an action is brought to recover same, interest from the commencement of the action can be recovered, regardless of a provision of the by-laws that interest shall cease upon notice of withdrawal.

Appeal from trial term.

Action by Michael Sinteff against the People's Building, Loan & Saving Association. From a judgment for plaintiff, defendant appeals. Affirmed.

The following is the opinion of the court below (NASH, J.):

By the terms of the certificate issued by the defendant to the plaintiff, the defendant, in consideration of the sum of $720—or $60 per share for 12 shares of its stock—paid by the plaintiff to the defendant at the date of the certificate, promised and agreed to pay to the plaintiff in accordance with its articles of association and by-laws, which were, by the terms of the certificate, made part of the contract, the sum of $1,200 at the end of five years from the date of the certificate, or at maturity of the stock; or, at the option of the holder of the certificate, the amount paid on the same might be withdrawn at any time after three years from its date, together with 6 per cent. interest, payable in the manner set forth in the articles of association and by-laws, and terms and conditions printed on the back of the certificate. The promise that, at the option of the holder, the amount paid on the certificate might be withdrawn at any time after three years from its date, with 6 per cent. interest, by the terms of the certificate, is absolute and unconditional. The articles of association of the defendant at that time authorized the issuing of the certificate in that form, and the by-laws provided that the holder might withdraw the amount paid on the certificate at any time after three years from the date of issue, and before maturity, together with annual interest of 6 per cent., to be computed for even months; interest to cease after the date of the application for withdrawal.

The contention of the defendant is that the seventh condition printed upon the back of the certificate, which provides that "the articles of association, by-laws, terms and conditions, together with the application, are to be construed together as the contract between the shareholder and the association," includes and makes applicable all subsequent amendments of the articles and by-laws made prior to actual payment to the shareholder giving notice of withdrawal, under the three-year or withdrawal clause of the contract. The amended articles and by-laws adopted since the certificate was issued to the plaintiff provide that payment shall be made upon withdrawals before maturity in the order of the applications for withdrawal, and that the association shall not be required to pay out on withdrawing or matured stock more than one-half the amount received from dues and stock payments in any month. The contention of the defendant is that, by the provisions of the amended by-laws, the action is prematurely brought, for the reason, as stated in the defendant's brief, that on the 10th day of August, 1895, the association had no funds on hand applicable, according to its rules, to pay the plaintiff's claim; and that this condition existed until long after January 11, 1896, at which time the association scaled its assets, and charged against the plaintiff's stock a loss of 23 per cent., and the plaintiff, being a member of the association at that time, and at all times since, is bound to pay his proper-

tionate share of that loss. It does not appear but that, if all the dues and stock payments had been applied, the prior withdrawals would not all have been paid long before the commencement of this action.

The authority for the defendant's contention is the case of Engelhardt v. Association, 148 N. Y. 281, 42 N. E. 710. That case holds that a member of a mutual loan association organized under the act of 1851 is subject not only to regulations existing when he became a member, but to such as may be enacted from time to time by the association, within the scope of the power given it by statute, including the power to enact, at any time, reasonable by-laws; and that a subsequent by-law, to the effect that withdrawing members should be paid in the order of the presentation of their applications, is a reasonable regulation, and binding upon all members alike, including those who became members before its adoption. But in laying down this rule the court held that, in the exercise of the power to make reasonable by-laws, a mutual association organized under the act of 1851 cannot destroy a contract created between it and its members by the articles of association to refund his dues to a withdrawing member. It may enact a by-law more or less affecting the remedy of the member, and existing members will be bound thereby, so far, at least, as they consented to the exercise of such a power when they became members. The articles of the defendant association in that case accorded to its nonborrowing members the right to withdraw from the association at any time on one week's notice, and in case of withdrawal it was provided as follows: "The dues actually paid in, together with such accrued profits as the directors may deem prudent for the interest of the association, will be refunded to them when the necessary funds are collected. Members who wish to withdraw have preference to those wishing to procure loans." "It seems," the court say, per Andrews, C. J., "to be very plain that the clause in the articles of association, that the dues paid by withdrawing members 'will be refunded to them when the necessary funds are collected,' operated as a qualification of the liability of the association to withdrawing members." And further on the opinion says: "There can be no doubt, we think, that the condition that the association should refund 'when the necessary funds are collected' was a material and substantive part of the obligation assumed by the association, and that it constitutes a good answer to the suit of a withdrawing member, that neither at the time that he withdrew, nor subsequently, before the action was brought, were there in the treasury of the association any funds collected, out of which the claim could be paid." This ruling disposed of the question then before the court for its decision, without the application of the further rule laid down, that a subsequent by-law, to the effect that withdrawing members should be paid in the order of their applications, was a reasonable regulation, binding upon all its members alike, including those who had become members before its adoption. In regard to the power to enact subsequent by-laws affecting such members, the court say: "It may be admitted that the association could not, under this power, destroy the contract between it and the member. But the contract made was in law subject to the power of the association to enact at any time reasonable by-laws. It would not be reasonable to extend this power so as to authorize the association, by a subsequent by-law, to change the essential character of an antecedent agreement between a member and the association; as, for example, that a withdrawing member should not be repaid his dues. But a by-law more or less affecting the remedy of the shareholder may be passed, and existing members will be bound, so far, at least, as they consented to the exercise of such a power when they became members." Here there are no such conditions annexed to the contract as in the Engelhardt Case. The option given to the shareholder to withdraw the amount paid, with interest, at any time after three years from the date of the certificate, is absolute and unconditional.

Whatever may be said of the provision of the by-laws subsequently adopted, to the effect that claims should be paid in the order of the applications for withdrawal, as a reasonable exercise of the power of the association to enact by-laws which should affect the remedy of the plaintiff as a shareholder demanding payment of his stock at maturity, it cannot be said that the subsequent by-laws, which provide that "only one-half the receipts of the associa-

tion in any one month shall be applicable to the payment of all claims," or that "the association shall not be required to pay out on withdrawing and matured stock more than one-half the amount received from dues and stock payments in any month," are provisions which merely affect the remedy of the plaintiff in the exercise of his right of withdrawal of the amount paid on his stock at the end of the three years. It is the withholding by the association of part of the means which the original articles and by-laws provided for meeting the absolute agreement of the defendant to pay upon withdrawal, at the option of the shareholder, after three years, and, if allowed, would destroy the contract to that extent. If the withholding one-half the dues and stock payments has, as it appears to have had, the effect of postponing payment beyond the time implied by law, which is, presently, upon giving the required notice, it is a violation by the defendant of its contract. For aught that appears, it has already had the effect of postponing the time of payment since August 10, 1895, and will, if the defendant's contention is allowed, postpone payment for a future indefinite period of time. Besides postponing payment for an indefinite time, there is also the actual pecuniary loss of the interest, which, by the terms of the by-laws, ceased after the application for withdrawal.

The association has sustained losses to the amount of 23 per cent. of its stock, on account of which the defendant seeks to charge against the plaintiff's shares, as of the 11th of January, 1896, $161.50, and reduce the plaintiff's claim upon his withdrawal by that amount. This, too, would be a violation of the defendant's agreement to pay to the plaintiff, at his option, after three years, the amount paid by him on his certificate. As to the provision of the certificate by which the association agreed to pay the plaintiff, as shareholder, the sum of $1,200 at maturity, he took his shares subject to the rules and regulations affecting all members alike. His stock matured when the net earnings would authorize its payment. It would bear its share of the losses, and the time of payment would be regulated by such reasonable by-laws as the association might enact, but, as to the option of withdrawal provided by the agreement, the time of payment and the amount cannot be changed by any subsequent act of the association. The exact amount is stipulated, and the time of payment is fixed in law by the terms of the contract.

The plaintiff did not, by giving his notice of withdrawal in the form in which it appears, upon a blank provided by the company, limit the time of payment or in any manner affect his rights under the contract. He is entitled to recover the amount paid on his stock, less the amount of expenses chargeable to his shares, conceded to be $100, and interest from the date of the certificate to the time of filing the notice of withdrawal. And the payment having been wrongfully withheld, at least from the time of the commencement of the action, interest should also be charged against the defendant from the time the action was commenced.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

Chester M. Elliott, for appellant.
H. J. Tuttle and Frank M. Hardenbrook, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of NASH, J., delivered at trial term.

---

GUINAN v. ALLAN et al.

(Supreme Court, Appellate Division, Second Department. April 18, 1899.)

1. ATTACHMENT—EXAMINATION AS TO PROPERTY OF DEFENDANT.
    Code Civ. Proc. § 651, providing for the examination of a third person concerning the property of a defendant in attachment, does not authorize the court or referee to enter into an inquiry as to affairs of the witness wholly unconnected with the property of the defendant.