WISE BROS., *et al., v.* YAZOO BUILDING & LOAN ASSOCIATION.

[62 South. 1.]

1. BUILDING AND LOAN ASSOCIATIONS. *Paid up stock. Withdrawal. Redemption value. Demand for payment. Creditors. Liquidation.*

Where by its charter the directors of a building and loan association were authorized in their discretion, to issue interest bearing stock in exchange for matured stock and such directors did authorize the issuance of such stock upon the withdrawal of paid stock, by resolution providing for such issuance if their attorney approved, and such attorney refused to approve of the same, the issuance of such stock by the secretary of the company was unauthorized and not binding upon the association.

2. SAME.

Where by the universal custom of such association, holders of paid up stock where allowed to withdraw their stock and take the withdrawal value in cash and there was no by-law of the

association condemning this practice, the holders of such stock, who withdrew it, and took in exchange interest bearing stock which was void because not authorized by the board of directors, became creditors of the association for the value of the stock withdrawn after paying the cash necessary to mature the stock, and were entitled to demand the amount of the matured stock and six per cent. interest from the date of withdrawal.

3. SAME.

The fact that the tentative settlement of the claim of such stockholders, by the issuance of interest bearing stock was defeated by the attorney's refusal to approve the issuance does not affect such holder's claim or demand against the association.

4. SAME.

Nor does the fact that the association, though solvent at the time the stock was withdrawn, went into liquidation two years thereafter, change the status of such former stockholders as creditors after the withdrawal.

OPINION ON SUGGESTION OF ERROR.

BUILDING AND LOAN ASSOCIATIONS. *Liquidation. Rights of creditors and stockholders.*

In liquidating a building and loan association, the rights of creditors are superior to those of stockholders and they must be paid first.

APPEAL from the chancery court of Yazoo county.

HON. H. G. LYELL, Chancellor.

Suit by Wise Brothers and others against the Yazoo Building & Loan Association. From a decree for plaintiff, defendant appeals.

The facts are fully stated on the opinion of the court.

*Holmes & Holmes,* for appellants.

On hearing of this case before the chancellor our friends contended that cash was the very lifeblood of a building and loan association. *Lea* v. *Cutrer,* 51 So. 808, was a case where the capital stock of a bank had been paid for, not in money, but in property and services. The charter of the corporation provided that the stock "may be paid for in cash or in monthly installments."

But our court held that this provision was not intended to
designate the medium of payment, but was used as a
term meaning the opposite of credit.  In the case at bar,
the charter of the association says nothing about cash.
No case can be found more in point than *Lea* v. *Cutrer,*
but see also, *Fardason* v. *Mercantile Co.,* 78 Miss. 65;
*Watts Mercantile Co.* v. *Buchanan,* 92 Miss. 540; *City
Bank of Columbus* v. *Bruce,* 17 N. Y. 507; *N. A. Building
Assn.* v. *Sutton,* 35 Pa. St. 463; *Taylor* v. *South & N. A.
Co.* (C. C.), 13 Fed. 152; *Marion Trust Co.* v. *Cresent
Loan & Investment Co.,* 27 Ind. App. 451, 61 N. E. 688,
87 Am. St. Rep. 257.  Monographic note to *Robertson* v.
*Homestead Association,* 69 Am. Dec. 158; *Johnson* v.
*Tabor,* 57 So. 365.

On the proposition that the privilege of withdrawal
from an association is a valuable right that cannot be
withheld, see *Fuller* v. *Salem,* 10 Gray 94.

The case of *Bohn* v. *Boone Building & Loan Associa-
tion,* 112 N. W. 109, is a striking authority in our favor,
and we hope the court will read it in full before deciding
the case.  It was a case where a holder withdrew his ma-
tured stock in an association and was given the associa-
tion's note for the same.  Shortly afterwards the associa-
tion went into liquidation, and it was claimed that the
note was invalid, claiming that he had not paid cash for
the note.  The stockholder claimed that he had loaned
the corporation the withdrawal value of his stock and was
entitled to priority over the other members who had re-
mained members subsequent to the transaction.  The
court said: "If he had received the money in his hand,
and then passed it back as a loan, taking a promissory
note therefor, no one would question the regularity of the
transaction, providing, of course, they were acting with-
in the apparent scope of their authority.  Such being the
case, no reason occurs to us why the same effect is not
to be accorded to the giving of the note without the idle
form of passing the money over the table; secretary
only to pass it back again."

The association went into liquidation voluntarily on May 27, 1907, nearly two years after the issuance of the stock here sued on, and began the distribution of its assets among all its members, but refused to pay complainants first, paying them like common stockholders their *pro rata* share of each distribution of the assets, but always figuring the amount of the distribution on the basis of the preferred stock, for instance Mrs. Hyatt was given her percentage on two thousand dollars and Wise Brothers on six thousand dollars. When the amount due complainants had thus been reduced by piecemeal to a little over half, they filed this suit claiming (1) that they were holders of preferred stock and were entitled to a lien on all the assets of the association to enforce payment, (2) that if the stock were held invalid, they were qualified creditors of the association from the date of their withdrawal therefrom, and as such creditors were entitled to be paid before the stockholders who had remained members after complainants withdrew, and (3) that if mistaken in the first or second relief asked, that they be given a personal decree against the officers who issued them the invalid certificates.

The chancellor denied the complainants any relief whatever, and dismissed their bill, taxing them with the costs. As above stated, he held the stock to be invalid because not paid for in cash. But he gave no reason for denying us the second and third relief asked, and we submit that no valid reason can be given. Members become creditors upon withdrawal.

We sincerely contend the preferred stock was valid and wholly paid for when issued but, if wrong in this, one thing is certain, Mrs. Wyatt withdrew her stock on August 5, 1906, and was entitled to one hundred and thirty-seven dollars and forty cents which has not been wholly paid to her. In addition to this she paid into the treasury of the association two dollars and sixty cents cash, making the sum of two hundred dollars due her by the

association, for which they pretended to give her pre-
ferred stock certificate. Now, if that stock certificate is
void, as the lower court held, what is her attitude with
respect to the association. Is she a creditor or a mem-
ber? Her relationship must be fixed as of August 5,
1905. If the stock is void now, it was void when issued.
She withdrew on August 5, 1905, and her withdrawal
was recognized by the association and so entered on the
books. We think she became a creditor, and all the au-
thorities so hold. She became a creditor in a qualified
sense, that is she was not entitled to priority over other
existing creditors, but she was entitled to priority over
stockholders who remained members and continued the
business. See 6 Cyc., p. 132, sec. 4 and notes.

Wise Brothers likewise became creditors on Septem-
ber 20, 1905, and were due six thousand dollars. Under
the by-laws, members withdrawing were entitled to in-
terest on the withdrawal value of their stock from the
date of withdrawal. If they were not creditors, why
pay them interest on the amount due them. Neither were
they entitled to vote as members. Let the court always
remember that at the time of these withdrawals the as-
sociation was perfectly solvent. If the association had
been insolvent, they could have obtained no priority by
withdrawing. But every member has the right to with-
draw from a solvent building and loan association, and
this right cannot be denied him by the officers. See,
*Haigh* v. *U. S. B., etc., Assn.,* 19 W. Va. 792; *U. S. B.
& L. Assn.* v. *Silverman,* 85 Pa. St. 394; *Hogsett* v. *Aetna
Building & Loan Assn.,* 96 Pac. 52; *Armitage* v. *Walker,*
2 Kay. & J. 211; In re Wm. Brown Building & Loan
Assn., 12 Week, Notes Cas. 207; *Printers Building &
Loan Assn.* v. *Paxton,* 33 S. W. 389.

That stockholders withdrawing from a solvent build-
ing association are to be paid in full in the order in which
they perfect their withdrawals, see *Hoyt* v. *Interocean
Building Association,* 58 Miss. 345, 60 N. W. 678. That

the right to withdraw is a vested right and a member cannot be deprived of it, *Holyoke Building & Loan Association* v. *Lewis*, 1 Col. App. 127, 27 Pac. 872. See, also, *People* v. *N. Y. Building & Loan Banking Company*, 104 N. Y. S. 892; 119 App. Div. 830; *Watkins* v. *Commonwealth Savings & Loan Association*, 64 Atl. 751; *People* v. *N. Y. Building & Loan Banking Co.*, 82 N. E. 1131, 189 N. Y. 547.

Under this view of the case, Wise Brothers are entitled to a personal decree against the association for two thousand, four hundred and two dollars and twenty-one cents, with interest from the same date. We insist that the lower court erred in denying us a decree for this amount.

*Campbell & Campbell* and *Barbour & Henry*, for appellees.

Appellants are attempting to fasten a prior lien on all the assets, to the prejudice of the other stockholders. Can this be done, in the manner it has been done? We think not; because it is destructive of the very basic principle of a building and loan association, and is violative of the mutuality and equality of these associations, which is peculiarly the law governing them. On this point we cite and quote from the following authorities: The first authority to which we cite the court is the case of *Bingham* v. *Marion Trust Company*, reported in 61 N. E. Rep., page 29.

The money ordinarily paid by Mr. Wise into this association was for stock, and not a loan. He was never a creditor of this association, and has never been, and cannot be converted into one. The mere fact that he exchanged one kind of stock for another kind of stock does not make him cease to be a member of the association, but he continues to be a member of the association, and is not a creditor.

"The fact that appellant gave notice of withdrawal, in compliance with the by-laws, before the appointment

of the receiver, would not place her in any better position than stockholders. *Finance Co.* v. *Tharp*, 24 Ind. App. 84; 56 N. E. 265, and cases cited; *Reddick* v. *Association* (Ky.); 49 S. W. 1075; *Forwood* v. *Eubank, supra; Leahy* v. *Association, supra.*"

We also call the court's attention to the case of *Sumrall et al.* v. *Commercial Bldg. Trust's Assignee, et al.,* reported in 50 S. W. Rep. 69, and also reported in 44 L. R. A. 659; and 90 A. S. R. 223. *King* v. *Investment Union* (Ill. Sup.), 48 N. E. 677; *Trowbridge* v. *Hamilton* (Wash.), 52 Pac. 328; *Wierman* v. *Investment Union,* 67 Ill. App. 550; *Latimer* v. *Investment Co.,* 81 Fed. 776; *Forwood* v. *Bubank,* 50 S. W. 255; *Reddick* v. *U. S. Building & Loan Assn's Assignee,* 49 S. W. 1075; *Sumrall* v. *Commercial Bldg. Trust's Assignee,* 50 S. W. 69; *Loan Co.* v. *Ecklar,* Id. 50; *Walker* v. *Terry,* 35 So. Rep. 466; *Fort Smith Building Assn.* v. *Cohn,* 87 S. W. 1172; *Colin* v. *Welford,* 102 Am. St. Rep. 859; *Columbus Bldg. Association* v. *Kriets,* 192 Ill. 128, 61 N. E. 510.

Counsel for complainants cite the case of *Lea* v. *Cutrer,* 51 So. Rep. 808, but not reported in the Mississippi Reports, being an unreported case, which he claims settled the validity of the stock issued to complainants, because the word "cash" is construed to mean the opposite of "credit."

To our minds, this case of *Lea* v. *Cutrer* is clearly and easily distinguishable from the instant case. This was a case in which J. W. Cutrer had subscribed for two thousand dollars worth of stock in the Jonestown bank. He was the regular attorney for the bank at the time, and in payment of legal services rendered, two hundred and fifty dollars, and the price of furniture and fixtures, one hundred and seventy-five dollars, that he sold the bank, the stock was issued. The bank became insolvent and Lea was appointed assignee, and afterwards sued Cutrer on his subscription for two hundred dollars claiming that the stock had never been paid for, and that Cutrer could

not pay for it in legal service rendered and property sold the bank, because the charter says it should be paid for in cash. This case is quite easily distinguishable from the case at bar for this reason. Here the bank was dealing with a third person. This third person had subscribed for stock. They owed him two hundred and fifty dollars for legal services, and he sold them property valued at one hundred and seventy-five dollars, being bank fixtures that he owned. The bank proposed to keep this furniture and did not propose to pay him for his services, the value of which they had received.

In the instant case the equities are all strongly with the other members of the association. Wise is not being attempted to be deprived of the value of his stock that he exchanged for this interest-bearing stock. We are simply to put him back where he was before this exchange was made, which we say was an illegal exchange and contrary to the law as to other stockholders. See *Bonnell* v. *Griswold*, 89 N. Y. 122-125. So we contend that "paid for" must mean "paid for in money," in the amendment to the charter, and in the by-law putting that amendment in force.

We think that the issuance of this stock was illegal, even if it had been paid for in cash, and could not be done, and we cite the following authority: Encyclopedia of Law, vol. 26, page 837.

So we say here, that for the association to issue this interest bearing stock made a first lien on all its assets, to one of its stockholders in exchange for existing stock, was destructive of the very principles of the association, and opposed to the very purpose for which this stock was ordered to be issued.

In this connection, we call the court's attention to a very recent case, reported in 139 L. R. A. 743, *Fitzgerald* v. *State Mutual Building & Loan Association,* which is from the New Jersey Court, 76 J. Eq. 137, and also reported in 79 Atl. 454. This case goes into the whole

question of the rights of the withdrawing members, or members whose money was in the association at the time of liquidation.

Argued orally by *T. H. Campbell* for appellant and *E. R. Holmes* for appellee.

Cook, J., delivered the opinion of the court.

The Yazoo Building & Loan Association was organized under the laws of the state to transact the business of a building and loan association, and was authorized to issue to its stockholders two kinds of stock—monthly payment stock and paid-up stock. The monthly payment stock was paid for by paying on its issuance fifty cents per share and fifty cents per month until the aggregate paid, plus the earnings, equaled one hundred dollars. To secure paid-up stock it was necessary to pay fifty dollars per share, and when the earnings, added to the amount paid, amounted to one hundred dollars per share, it was called "matured," and had to be withdrawn.

Appellants were owners of certain shares of paid-up stock, and when the same were about to mature they, by the payment of some cash, exchanged the paid-up stock for interest-bearing stock. About two years after the exchange the association went into liquidation and refused to recognize the acts of its president and secretary in the issuance of the interest-bearing stock. Appellants thereupon exhibited their bill of complaint in the chancery court of Yazoo county, asking that the association be required to pay to them the full amount of the interest-bearing stock, and that a lien be impressed upon all assets of the association to secure the payment thereof; or, if the court should determine that the stock issued to them was invalid, then the court was asked to decree that they were creditors of the association to the extent of the withdrawal value of the stock, exchanged for the interest-bearing stock. There was a further

prayer to the effect that, if they were not entitled to relief against the association, they were at least, to a personal decree against the officers who issued to them the invalid stock. The cause being submitted to the chancellor upon bill, answers, and proof, a decree denying any relief and dismissing the bill was entered.

It appears that, when the secretary reported to the board of directors the applications of appellants to withdraw their paid-up stock and to take in lieu thereof interest-bearing stock, the board ordered that the stock be issued, "provided the attorney approves it." The attorney was absent when this order was made, and did not know it had been made until after the president and secretary had issued and delivered the stock to appellants. It further appears that the attorney, when he learned of the transaction, refused to approve it, and rebuked the secretary for his action. Appellants testified that they were never advised of the conditional order or the attorney's disapproval. The secretary testified that he informed them about both. So here we have an irreconcilable conflict of evidence.

The directors were not bound to issue the interest-bearing stock at all. This was by the amendment to the charter left to their discretion. It is claimed that the board subsequently ratified the issuance of the stock by paying the interest thereon; but. this is not clear, and, if true, we are not prepared to say that ratification can be implied, under all the circumstances of the case. Waiving all question of the right of the board to issue interest-bearing preferred stock in exchange for matured stock, we believe the board could authorize the issuance of the stock, "provided the attorney approved it," and, it appearing that the attorney did not approve, we think the issuance of the stock was unauthorized.

By the universal custom of the association, holders of paid-up stock were allowed to withdraw their stock and take the withdrawal value in cash. We can find no by-law

in the record which condemns this practice. It appears, also, that appellants did elect to withdraw their stock in the usual way, and they say that they demanded the cash value of same, but at the request or suggestion of the secretary they accepted the interest-bearing stock in lieu of the cash. The secretary testified that they suggested the issuance of the stock in exchange for the withdrawn stock. This conflict is immaterial, as there is no conflict that they were permitted to withdraw the stock.

When the stock was withdrawn, and the cash necessary to mature the stock was paid, appellants then became creditors of the association. This was the course of business, and when the stock was thus matured the stockholders could demand the cash. They were no longer stockholders, but creditors. Being creditors, the chancellor was in error in refusing to enter a judgment in their favor for the amount of the matured stock withdrawn, plus six per cent. interest from the date of withdrawal. This seems to be the legal and equitable aspect of the case.

There was a payment to mature the stock, which, when matured, constituted a demand for payment of indebtedness. The fact that the tentative settlement of the claim by the issuance of interest-bearing stock was defeated by the attorney's refusal to approve the issuance does not affect appellants' claim or demand against the association.

It is argued that the association was insolvent at the time of the withdrawal of the stock; but we do not think the record shows this to be true. The assets of the association appear to have been greater than its liabilities, and that the association, nearly two years thereafter, elected to liquidate, does not change the status created by the withdrawal.

Certainly the appellants could have sued the association at law for the amount due them. The very plan of organization makes the holders of matured stock cred-

itors.  In *Bohn* v. *Boone Building & Loan Association,*
135 Iowa, 140, 112 N. W. 199, 124 Am. St. Rep. 263, the
court was deciding a case wherein a stockholder in a
building and loan association withdrew his matured stock,
and in lieu thereof the association executed and deliv-
ered to him the association's note for the withdrawal
value of the stock.  Shortly after this the association went
into liquidation, claiming that the note was invalid, be-
cause the stockholder had not paid to the association the
money which the note purported to represent.  It was the
contention of the stockholder that he had loaned the asso-
ciation the amount of the withdrawal value of his stock,
and was entitled to priority over the other members, who
had remained members subsequent to this transaction.  In
this state of the case the court said:  "If he had received
the money in his hand, and then passed it back as a loan,
taking a promissory note therefor, no one would ques-
tion the regularity of the transaction, providing, of
course, the officers were acting within the apparent scope
of their authority.  Such being the case, no reason oc-
curs to us why the same effect is not to be accorded to
the giving of the note, without the idle form of passing
the money over the table, the secretary only to pass it
back again."

It is shown by the record that several other stockhold-
ers matured their stock exactly in the same way that
appellants matured theirs, and those stockholders were
treated as creditors.  When the stock was withdrawn,
the holder was entitled to the cash; he no longer shared
in the profits; he was no longer a stockholder.

*Reversed and remanded.*