## CONNALLY et al. v. CONTINENTAL–SOUTHLAND SAVINGS & LOAN ASS'N.

### No. 11167.

Court of Civil Appeals of Texas. Dallas.

Nov. 21, 1931.

Rehearing Denied Nov. 12, 1932.

Renfro, Ledbetter & McCombs, Louis J. Hexter, Wm. Andress, Jr., W. Gregory Hatcher, and Goggans & Ritchie, all of Dallas, for appellants.

Geo. T. Burgess, of Dallas, and Maco Stewart, of Galveston, for appellee.

JONES, C. J.

Mrs. May Connally, one of the appellants, filed, a suit in a district court of Dallas county against Continental-Southland Savings & Loan Association, appellee, to recover the sum of $5,100, alleged to be due her by virtue of the fact that she owned class C shares in appellee association, of the par value in said amount, and that when she subscribed for the shares she paid in cash to appellee the par value of the stock. A number of others, who are appellants, intervened in the suit, also seeking a recovery of the value of matured shares, which they severally owned in the appellee association. A temporary writ of injunction was sought by each appellant to restrain an alleged illegal transfer of the assets of appellee, until its obligation to each had been paid. The trial court sustained a general demurrer to the pleading of each appellant, and a judgment of dismissal was entered in the cause. An appeal has been duly prosecuted to this court for review of the judgment. The following is a sufficient statement of the case:

A general demurrer having been sustained, this court must treat as established facts on this appeal all of the facts alleged in the pleadings of appellants. The petition of the plaintiff and each plea of intervention are substantially the same in respect to the allegations on which is rested the cause of action.

Appellee was incorporated as Continental Savings & Building Association, and about January 30, 1929, the assets of the Southland Building & Loan Association, were purchased by appellee and all of the liabilities of the selling corporation were assumed by the purchasing corporation. When this purchase was made, the name was changed to Continental-Southland Savings & Loan Association.

As the fact appears from the pleadings that the present stockholders in the appellee association, who had subscribed for stock in the selling association, have all of the rights that accrued to them under the selling association, the case will be discussed as though appellee was the original association. It is shown that appellee is a solvent and active building and loan association, chartered under the

building and loan laws of this state, with idle money in its treasury in a sum of more than twice the amount alleged to be due all of the appellants. Each appellant has given the notice legally required to make the sum sought to be recovered due and payable. Each appellant claims that he has priority over every other like claim due to investment stockholders. In other words, the petition of plaintiff and each plea of intervention contain all of the necessary allegations to entitle each party to priority in payment from the idle fund of a solvent and active building and loan association.

The allegations in plaintiff's petition and in each intervener's plea show that Maco Stewart has made a proposition to purchase all of the assets of appellee association and to assume its obligations to the stockholders on terms stated in the written proposal, accepted by appellee's administration officers and submitted to the stockholders for their acquiescence. The proposal is as follows:

"A Proposal from Maco Stewart to Shareholders of the Continental-Southland Savings and Loan Ass'n, Dallas, Texas, September 12th, A. D., 1931.

"When substantially all of your shareholders whose stock is pledged to secure real estate loans and two-thirds in number and amount of your other shareholders, sign and return duplicate of this letter authorizing liquidation of the Continental Southland Savings and Loan Association (and such liquidation approved by the Banking Commissioner as required by law) and the sale to me of all assets for $4,231,195.13, I will purchase all stock in Continental Southland Savings & Loan Association on the following terms:

"The auditors, Hutchinson, Smith, Prince and Harris, have divided your assets into two classes, A and B (as per their enclosed statement) placing into Class A your properly secured and current real estate loans plus sufficient amount of lawful stock loans and note of liquidating company to bring the total assets to $5,090,243.91 (being 75% of total outstanding stock other than permanent stock and stock pledged to secure real estate loans), and placing into class B your remaining assets subject to your liabilities. The note of the liquidating corporation to be payable on or before five years and bearing interest at the rate of six per cent. (6%) payable monthly with right to pay thereon at any time any sum desired and same to be secured by lien on all assets of liquidating corporation.

"I will pay for the assets in Class A, stock in Guaranty Building & Loan Co., amounting to $5,090,243.91 to be evidenced by Certificates (in form printed on back hereof) and same to be exchanged and distributed ratably to your shareholders (other than permanent shares and shares pledged on real estate loans) in proportion to their credits shown on the books of the Continental Southland Savings and Loan Association.

"I will pay for the remaining assets in Class B, stock in the Mortgage Liquidating Corporation to be formed by me and operated solely for the purpose of liquidating your Class B assets, subject to your liabilities. The stock in such liquidating corporation will be non-par stock in usual form. There shall be seven directors of whom four shall be named by Continental-Southland's present directors and three by Stewart and any action by Board to receive two-thirds vote of Board.

"The foregoing assures your shareholders receiving the full benefit of all assets of the Continental Southland Savings and Loan Association.

"On the basis of your Class A assets being fixed as above stated each Continental Southland shareholder (other than permanent shareholders and shareholders whose shares are pledged to secure real estate loans) will receive stock in Guaranty Building & Loan Co. to the extent of seventy-five per cent. of the amount now credited on the books to his stock, and for the remainder will receive his pro-rata of stock in the liquidating corporation. As an illustration—One who has credit on the Continental Southland books of say $1,000.00 will receive 7½ shares of stock in Guaranty Building & Loan Co., of the face and par value of $750.00 and will also receive 250 shares in the Liquidating Corporation, all of which will be preferred over the shares to be issued as Common stock to your permanent shareholders.

"The certificate in stock of Guaranty Building & Loan Co. provides for dividends quarterly and expressly restricts filing of application for withdrawal to one-fifth of the amount per year.

"The assets of the Liquidating Corporation will consist principally of real estate and delinquent notes and be liquidated in an orderly manner and as fast as can be done without sacrifice. Guaranty Building & Loan Co. will furnish, without charge, all clerical services in the home office necessary in such liquidation, and no charge will be made for my services to the Liquidating Corporation.

"When the proposed plan meets the required approval, each shareholder in Continental-Southland will be promptly notified to send in stock to the First National Bank of Dallas, which will act as transfer agent for the stock.

"The assets so transferred to me will be simultaneously by me transferred, the Class A assets to the Guaranty Building & Loan Co. and the Class B assets to the Liquidating Corporation.

"Each borrower will receive credit on his loan for the amount paid in as stock dues and dividends as credited to his account by the books of the Association and such borrower shall execute extension note payable to Stewart or assigns for the balance as shown by

such books at the same rate of interest provided in note now held by the association and principal and interest re-payable in installments of not less than $12.50 per month per thousand.

"Time is of the essence of the contract and the required approval must be had by October 18, 1931, and the deal will then be promptly closed.

"Respectfully,

"Maco Stewart."

Appellants allege that the approval of the required two-thirds majority of the investment stockholders will be given, that the proposal of Stewart will thereby be accepted upon its terms, and that all of the assets of appellee will thus pass into the possession and apparent ownership of Stewart, and that they will thus be deprived of a vested right to have immediate payment of the full withdrawal value of their shares. They further alleged, in effect, that the proposal of Stewart is illegal, in that the proceedings to be had under the terms of the proposal, to effect the dissolution and liquidation of appellee, are neither that of voluntary liquidation, as provided for in our building and loan law, nor that of a consolidation with another like association, nor a transfer of appellee's "engagements, funds and property" to another association. Appellant's allegations in respect to the solvency of appellee, the fact that it is an active building and loan association, and that the proceedings attempted to be carried out under the proposal of Stewart, are illegal, are very full and complete, but it is not deemed necessary to state the scope of such pleadings, other than as given above.

Appellants contend that the allegations in their petition state a cause of action existing solely against appellee, in that, if they established by proper proof the truth of these allegations they are entitled, under the law, to the relief they seek, and that the court erred in sustaining the general demurrer.

Appellee contends that the court did not err in sustaining both the plea in abatement and the general demurrer to the petition, because (a) the pleadings show on their face that other investment shareholders are directly interested in the subject-matter of this suit and are therefore necessary parties; (b) the suit is prematurely instituted, in that the building and loan law requires the approval of the banking commissioner before such a transaction can be consummated, and the Stewart proposal also makes such an approval a condition precedent to consummation, and that the pleadings of appellants show that the transaction sought to be consummated had not reached the stage where such approval could be formally given; (c) that, under the building and loan law of this state, it is entirely within the discretion of the banking commissioner as to whether the proposed transaction can be consummated, and, in the absence of an allegation of fraud in securing the approval of the banking commissioner, the courts are without jurisdiction in the premises; (d) that, if appellants be entitled to payment of their accrued claims, they must secure this through the order and direction of the banking commissioner to appellee's officers, and cannot invoke the power of a court until this means to secure payment has been exhausted.

It is not necessary to consider separately these different contentions, but they will be considered together. Whether appellants' contention is sustained, or whether it must fall before appellee's contentions, must be determined from the construction given the statutes in our building and loan laws, applicable to the matters under review. This statutory law is so comprehensive in its terms and so complete in its application to every phase of the business of building and loan associations that, to our minds, the conclusion is inevitable that the Legislature intended that the methods therein prescribed should be exclusive of any other method of accomplishing the same purpose. This law prescribes with particularity both the method of organizing and the purposes for which such associations are organized; it classifies the kind of shareholders that may exist in such associations, and clearly defines the rights of each; it prescribes the procedure to follow in the dissolution and liquidation of an insolvent association; it prescribes the procedure to follow in the dissolution and liquidation of a solvent association, the procedure by means of which one association may be consolidated with another, the procedure by means of which an association may sell its assets and transfer its engagements; and it further provides that all of these statutory proceedings must have the approval of the banking commissioner, or must be done under his supervision before final consummation.

The duties of the banking commissioner, relating to building and loan associations, are defined in our building and loan law with such particularity that we conclude that his entire duties in reference to building and loan associations are therein described, and that he can perform no duty other than those either expressly given or clearly implied by the statutes composing this law. This officer is given, by article 881a—7, Vernon's Ann. Civ. St., supervision over, and control of, all building and loan associations, doing business in this state, and is charged with the execution of the laws of this state relating to such associations. Article 881a—13 makes it the duty of this officer to act when any building and loan association is conducting its business, in whole or in part, contrary to law, or failing to comply with the law, etc. Article 881a—54 prescribes the method by which two or more building and loan associations may be consolidated, or the method by which the sale of the engagements, funds, and

property of a building and loan association may be transferred to another, and provides that, "No consolidation or transfer provided herein shall take effect until the terms and conditions have been approved by the Banking Commissioner of Texas," and like instances might be cited. From these excerpts and others that might be quoted from the building and loan statutes of this state, it is clear that the banking commissioner's duties relate only to those proceedings and transactions of building and loan associations permitted and allowed by statutory law, except only when such an association is operating its business contrary to the building loan statutes. It follows as an inevitable conclusion that, if the Stewart proposal to take over the "engagements, funds and property" of the appellee association, is such a transaction as is authorized by such statutes, then the banking commissioner is vested with power to approve or disapprove such transfer, and, in the absence of fraud, his action in the premises would be final, and appellants would be relegated to the purchaser for the enforcement of their claims. The same conclusion must follow if the proposal of Stewart, calling for a dissolution of the appellee association and the winding up of its affairs, be such a voluntary dissolution and liquidation as is authorized by these statutes. In such an event, appellants would have to look to the cash proceeds of appellee's assets for their claims.

Is the transaction embraced in the Stewart proposal authorized by, or in contemplation of, the building and loan law of this state? This must be answered by applying the terms of the proposal to the provisions of articles 881a—54 and 881a—55, supra. Article 881a—54 reads: "At the annual meeting or at any meeting called for that purpose, any two or more building and loan associations organized under the laws of this state may, by vote of two-thirds of all shareholders of each of the different associations, resolve to consolidate into one association upon such terms as shall be mutually agreed upon by the directors of such associations; or any such association may transfer its engagements, funds and property to any other such association upon such terms as may be agreed upon by its board of directors, when approved by two-thirds of all the shares of all members convened in special meeting for that purpose, the notice sent to each member of record specifically stating the object of the meeting; if such notice shall state affirmatively the terms upon which such consolidation is contemplated and shall state that any member not present at the meeting in person or by representative will be regarded as having voted for the transfer or consolidation, such absent member shall be counted as being among the required two-thirds affirmative vote; but such transfer shall not prejudice the right of any creditor of any such asso-

ciation to have payment of his debt out of the assets and property thereof, nor shall any creditor be thereby deprived of or prejudiced in any right of action then existing against the officers or directors of said association for any neglect or misconduct; providing that the reorganized association shall be liable for all obligations to stockholders of the associations existing prior to such consolidation, and providing, further, that no consolidation or transfer provided herein shall take effect until the terms and conditions have been approved by the Banking Commissioner of Texas, and until a copy of the resolution, certified by a majority of the board of directors of each association, shall be filed with said Banking Commissioner of Texas, and recorded in the same manner hereinbefore provided for amendments to charters."

Article 881a—55 reads: "At the annual meeting or at any meeting called for that purpose, any Building and Loan Association of this State may, by a vote of shareholders owning two-thirds of the voting shares in force, resolve to liquidate and dissolve the corporation; providing, that before such resolutions shall take effect, a copy thereof, certified to by the president and the secretary of such Association, together with an itemized statement of its assets and liabilities, sworn to by a majority of its Board of Directors shall be filed with the Banking Commissioner of Texas. When the Banking Commissioner of Texas has approved such resolution it shall thereafter be unlawful for such Association to issue stock or make any loans, but all its income and receipts in excess of actual expense of management shall be applied to the discharge of its liabilities; and the officers of the Association, under the direction of its Board of Directors and under the supervision of the Banking Commissioner shall thereupon proceed to liquidate the affairs of the Association and reduce the assets thereof to cash and distribute the same among the shareholders in proportion to the withdrawal value of the holdings of each shareholder at the time of the passage of the resolution to dissolve. Provided, however, that the plan of the liquidation, including contemplated expenses and the sale of any or all of its assets shall have the approval of the Banking Commissioner or his authorized representative before any expenses are incurred or any sale or sales are made, and any and all expenses incurred by the Banking Commissioner or his duly authorized representative shall be paid from the assets of the Association."

■ The Stewart proposal offers to appellee's investment shareholders, which offer includes appellants, stock in the Guaranty Building & Loan Association, to the extent of 75 per cent. of the amount now credited on appellee's books to each of said share-

holders, and for the remaining 25 per cent. of such credit, shares in the liquidating corporation created, as specified in the proposal. Each appellant, having paid in full the par value of the stock issued to him, has credit therefor on appellee's books, and would receive for each $1,000 worth of stock, $750 worth of stock in the Guaranty Building & Loan Company, and 250 shares in the liquidating corporation. Under the by-laws of the Guaranty Building & Loan Company, each appellant could withdraw in one year only 20 per cent. of the stock issued to him. In other words, it would require five years to complete the withdrawal value of the 'stock given him in the Guaranty Building & Loan Company.

Such is the character of voluntary liquidation of appellee's assets contemplated under the Stewart proposal. Said article 881a—55 prescribes the character of a voluntary liquidation of a building and loan association, and is the only voluntary liquidation that is placed under the supervision of the banking commissioner. A mere glance at article 881a—55 discloses that the Stewart plan of liquidation is not simulated to the plan directed by this statute. Under the statutory plan, all assets·of the association are required to be reduced to cash and distributed to the shareholders in proportion to the withdrawal value of the holdings of each shareholder at the time the voluntary liquidation was ordered by the association. The Stewart plan distributes no cash, but gives stock to the shareholders, the par value of which is equal to 75 per cent. of the surrender value of each investment member's holdings, and the remaining 25 per cent. in the liquidating corporation. The conclusion is inevitable that the Stewart proposal for a voluntary liquidation by appellee is not one contemplated by the statute, and hence is not one over which the banking commissioner is given jurisdiction to act.

Is the transfer embraced in the Stewart proposal authorized by, or in contemplation of, the provision of article 881a—54, describing the manner under which transfer of the "engagements, funds and property" of a building and loan association may be consummated? We do not think so. This statute declares that "Any such association may transfer its engagements, funds and property to any other such association upon such terms as may be agreed upon by its board of directors, when approved by two-thirds of all the shares of all members convened in special meeting for that purpose * * *; but such transfer shall not prejudice the right of any creditor of any such association to have payment of his debt out of the assets and property thereof * * *; providing that the reorganized association shall be liable for all obligations to stockholders of the associations existing prior to such consolidation. * * *"

It appears from this statute that the only character of statutory transfer is one to another building and loan association; however, in its last analysis the Stewart proposal has this effect, because the proceeds of the transfer are given to appellee's shareholders in stock of the Guaranty Building & Loan Association, another similar association. Appellee, as a solvent and active building and loan association, now owes each appellant the full surrender value of his stock, and each appellant is entitled to payment in cash of this surrender value from the idle fund now on hand.· Under the statutory transfer described in article 881a—54, this obligation must be carried out by the purchasing association. The Stewart proposal ignores this obligation and substitutes in lieu thereof another and entirely different obligation of the Guaranty Building & Loan Company. The conclusion therefore must follow, that the Stewart proposal does not embrace the character of transfer authorized by article 881a—54, and, not coming under the provisions of article 881a—55, supra, the proposal is one entirely outside of the statute and not under the supervision of the banking commissioner.

'The proposal of Stewart not contemplating such a transfer of the engagements, funds, and property of appellee as is authorized by the building and loan statutes of this state, it follows that the provision of article 881a—54 which allows a statutory transfer to be authorized by two-thirds vote of the shareholders, cannot apply to the Stewart proposal, and appellants not agreeing to such transfer will not be bound by such vote of the shareholders. Article 881a—54 of the building and loan statutes, in effect, is a guaranty to the stockholders in a solvent and active building and loan association, that no character of transfer of the entire assets of such company can be forced on them by a two-thirds vote of all the shareholders, except the character of transfer described in said article. Article 881a—55 of such law is a guaranty to the shareholders in every solvent and active building and loan association that no voluntary dissolution and liquidation can be forced on them by a two-thirds vote of all the shareholders, except that character of voluntary liquidation described in said article.

■ The Stewart proposal not being authorized either by the provisions of article 881a—54 or article 881a—55, of our building and loan statutes, it follows that it does not rest within the discretion of the banking commissioner to bring it within either of such articles by an attempt to consummate the proposed transaction with the stamp of his official approval.

■■ Are all of the permanent shareholders of the appellee association necessary parties to this suit? We do not think so. When

appellants had matured their claims, it became the duty of appellee to pay each claimant the amount of the surrender value of his stock from one-half of the idle money in its treasury. The pleadings show, and we must treat such showing as a fact, as against a general demurrer, that the necessary funds to pay these claims are on hand for such purpose. In a suit to enforce such claims, appellee is the only necessary defendant. Kelly v. Republic Bldg. & Loan Ass'n (Tex. Civ. App.) 34 S.W.(2d) 924; 14 R. C. L. 355, 356, and authorities cited in note No. 19. This suit is not an injunction suit, for the temporary writ of injunction prayed for is only incident to the main purpose of the suit, and this incidental matter cannot control the question of necessary parties. Under subdivision 2 of article 4642, R. C. S. 1925, it is provided that, if one party to a suit threatens, or is about to do, some act in violation of the rights of another party to the suit, an injunction may be issued to restrain the commission of such suit. In the instant suit, appellee not only threatens to, but is in the process of, transferring all of its engagements, funds, and property to another association in a transaction not authorized by the building and loan statutes, and hence the right to apply for a writ of injunction as an incident to the suit is a statutory right and does not change the character of the principal suit.

If it should be determined on a hearing in the trial court that appellee is a solvent active building and loan association, then appellants are entitled to a temporary writ of injunction restraining the sale and transfer of the assets of the association until their matured claims have been satisfied from funds that can be legally used for such purpose. On the other hand, if it should be determined at such hearing that appellee is insolvent and unable to satisfy the matured claims of appellants, then appellants would not be entitled to such injunction, nor would they be entitled to a judgment in their favor for their matured claims. As stated in 4 R. C. L. 356, § 15, "It seems to be generally held that the right to withdraw and receive what has been paid exists only where the association is a going concern, and cannot be exercised where the association is, at the time, known to be insolvent, for the condition of insolvency is incompatible with the right of any member to withdraw his contribution to the general fund until the proper proportion of the losses has been ascertained and adjusted." On insolvency of such an association, a member with matured claims cannot assert other than his right for a pro rata share in the distribution of its assets. Our building and loan association law clearly manifests the intention to place an insolvent building and loan association under the administration of the banking commissioner. Our conclusion, therefore is that, if it be established on the hearing of this case that appellee is insolvent, then our statutes allow but two courses: (1) A liquidation under the statute had under the guidance and supervision of the banking commissioner; or (2) a reduction of the association's liabilities to its members on the plan provided by article 881a—56. This must be done under the supervision of the banking commissioner.

It necessarily follows that it is the holding of this court that appellants stated a cause of action and that the trial court erred in sustaining the general demurrer, and the case is reversed and remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.