## WOODS v. WICHITA FALLS BUILDING & LOAN ASS'N.

### No. 12901.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 4, 1933.

Rehearing Denied Dec. 2, 1933.

Jos. W. Hale, of Waco, for appellant.
E. M. Mann, of Wichita Falls, for appellee.

LATTIMORE, Justice.

This is a suit by appellant for the sum of $19,000, being the withdrawal value of two certificates of shares in appellee association. The notice of withdrawal of such value was given on November 29, 1930. The appellee was allowed a year within which to pay same. It did not pay. On a trial the district court found that the appellee "is insolvent."

Section 47 of chapter 61, Acts of Second Called Session of the 41st Legislature, provides: "No building and loan association shall permit any member to withdraw any portion of his investment in excess of $500.00 in any one month without thirty days written notice to the association, and any withdrawal must be made subject to the provisions of the by-laws with respect thereto, providing, however, that whenever the association has on hand idle funds it may pay same out to its members when and as may be determined by the Board of Directors, and provided in by-laws approved by the Banking Commissioner of Texas. The withdrawing shareholder or the legal representative of any deceased shareholder shall be paid the amount of the withdrawal value of the shares, provided, that upon withdrawal of shares pledged to the association for a stock loan, the association shall first deduct therefrom the indebtedness due the association, and withdrawals shall be paid in the order of their filing, except as hereinafter provided, and it shall be the duty of the secretary or other officer discharging such duties to enter upon each notice the order and date of filing. Except as hereinafter provided, not more than one-half of the receipts of the association in any month shall be applied to the payment of withdrawals without the consent of the board of directors. Whenever an application for withdrawal shall have been on file and shall have remained unpaid for a period of twelve months, all of the receipts of the association in any month from dues, loans repaid, and the proceeds of all other investments shall be applied to the payment of withdrawals, and the board of directors or the Banking Commissioner of Texas, in their discretion, may direct that withdrawals thereafter be paid upon a ratable and proportionate basis. After filing notice of withdrawal provided herein, the withdrawing member shall be entitled to the dividends credited to the same, class of shares until the final payment of his shares is made, and membership in the association shall remain unimpaired

so long as any accumulation remains to his credit. No officer, director attorney, clerk or agent of the association, and no person in any way interested or concerned in the management of its affairs may discount directly or indirectly, or directly or indirectly purchase a share of any such association, whether filed for withdrawal or not, except by the payment therefor of the withdrawal value of such share as determined herein."

■ The by-laws of appellee, adopted February, 1930, as copied in the statement of facts, are unintelligible. It thus appears that the payment of withdrawals before the application therefor has been on file one year is within the sound discretion of the board of directors.

■■ When the application has been on file one year and shall have remained unpaid, "all the receipts of the association in any month from dues, loans repaid and the proceeds of all other investments shall be applied to the payment of withdrawals and the Board of Directors or the Banking Commissioner in their discretion may direct that withdrawals thereafter be paid upon a ratable and proportionate basis." A reading of the section discloses that the Legislature has been discriminating in the proper use of "may" and "shall," and we conclude that the association is compelled to so apply the funds designated in the command—and this "in the order of their filing." It seems that it was the intention of the Legislature that, when that twelve months' notice had been completed, the right of the withdrawing shareholder to the funds received for any one month could not be thereafter interfered with by directors or commissioner, for the statute specified, upon such application of such one-month funds, "such officers may direct that withdrawals thereafter be paid upon a ratable and proportionate basis." While we are at loss to know why such a basis should be established, it is our business to interpret what is enacted, and the only possible conclusion we have been able to make is that the month referred to is the month next succeeding the twelve months' notice. "Any" should not have the meaning here of "each" or "all" for that could destroy the association by leaving it without means to pay the very help and expenses which are necessary to collect the funds which the statute would apply to the shareholders' withdrawal. This entire section speaks plainly the intention of the Legislature to give the shareholder liquidity to his stock, but surrounded by such safeguards as would prevent him from destroying by hasty demands the value of the other shareholders' stock by insisting on immediate cash payment at a time when the stability of the association would be imperiled to accede to the demand.

On July 9, 1932, the appellee ordered that withdrawals be paid upon a ratable and proportionate basis.

Appellee pleaded that 45 of its stockholders had filed applications to withdraw prior to appellant, and that in all 98 per cent. of the stock of appellee was on file for withdrawal; that the existing industrial depression had so reduced appellee's real estate values and the security for its loans, that, if it were compelled to sell its assets on the market at this time, the proceeds would not equal the outstanding stock of appellee, but that, if it were allowed to continue the ratable payment of said withdrawal as funds were collected in an orderly and businesslike manner, in all probability each stockholder would be paid in full. On trial it was shown that this was true, and that the appellee had persuaded all but two of the stockholders to rescind their demands for withdrawal in cash. There was in appellee's possession at the time of trial cash in an amount greater than appellant's claim, but debts direct and contingent existed in an amount greater than the cash.

■ The court made no finding on whether the appellee was insolvent either on January 28, 1931, or on November 29, 1931. When appellant's claim matured on November 29, 1931, and became enforceable, he became in a qualified sense a creditor of appellee, certainly so as far as the stockholders are concerned, the association being solvent. Law of B. & L. Ass'n by Sundheim, p. 154; Young v. Stevenson, 180 Ill. 608, 54 N. E. 562, 72 Am. St. Rep. 236; Holyoke Ass'n v. Lewis, 1 Colo. App. 127, 27 P. 872; Englehardt v. Fifth Ward Ass'n, 148 N. Y. 281, 42 N. E. 710, 35 L. R. A. 289; Enterprise Bldg. & Loan Soc. v. Bolin, 12 Colo. App. 304, 55 P. 740. And if the association was then a solvent going concern, he is entitled to be ranked as a general creditor. Wise Bros. v. Yazoo Bldg. & Loan Ass'n, 105 Miss. 78, 62 So. 1; Bates v. American Ass'n (C. C. A.) 120 F. 1018. Insolvency as to a building and loan association is different from the general rule for corporations and exists when the available and collectable assets are not equal to the stock already paid in plus the demands of creditors. Globe Bldg. Co. v. Wood, 110 Ky. 4, 60 S. W. 858, 96 Am. St. Rep. 417.

■ At the time appellant acquired his stock in 1924 no statute or by-law authorized any proration to withdrawals of income or cash available of appellee, but on the contrary the by-laws provided that one-third of each monthly income should be applied to payment of withdrawals. The right of such associations to pass such by-laws and apply same to pre-existing stockholders is the subject of some discord in the various states, Holyoke Ass'n v. Lewis, 1 Colo. App. 127, 27 P. 872; Sinteff v. People's Ass'n 37 App. Div. 340, 57 N. Y. S. 611, affirmed 166 N. Y. 630, 60 N. E. 1120, denying such right, while language to the contrary is found in Englehardt v. Fifth Ward Ass'n, 148 N. Y. 281, 42 N. E. 710,

35 L. R. A. 289. In Kelly v. Republic Ass'n (Tex. Civ. App.) 34 S.W.(2d) 924, it was held that the statute of 1929, above cited, was not binding upon stock acquired prior to its passage. While the question of the right of the association to pass such by-laws under its general power to amend by-laws was not specifically discussed in the opinion, the holding of the court was that such a by-law was not binding on a stockholder who acquired his rights prior to its adoption. Much may be said to support the opposing doctrines, the one being based on the theory of vested rights, the other on the agreement of the stockholder in acquiring his stock that the by-laws may be amended. However, in view of the declaration of the Texas policy in the Kelly Case, we conclude that an orderly administration of the law is better subserved by our concurrence therein. We note in passing, in view of what we shall say hereafter, that insolvency was not involved in the Kelly Case.

What we have said disposes of the status of appellant's claim against the association. We now consider the issue of insolvency of appellee at the time of trial. If the appellee was insolvent at the time of trial, then it must be made solvent under the order of the commissioner, or it must be liquidated. If the latter course is followed, then the question arises as to the course to be followed in such liquidation, largely to be determined by the probable value to be received by appellant and the other creditors and stockholders and the result of the probable courses of such liquidations.

▌ In determining the question as to the withdrawal value of appellant's stock, he must bear his share of losses sustained or imminent or probable. Appellant claims the right to payment in cash forthwith, and he must concede the same right to each other shareholder. Manifestly, some of the loans are not yet due, and some losses have been estimated on real estate, and the probabilities on the converting of those assets into cash is a part of the computation of whether all debts can be paid or not. Natl. Ass'n v. Hottensteen, 10 P. L. G. (N. S.) 225. Appellant contends that, inasmuch as this statute (section 16 [Vernon's Ann. Civ. St. art. 881a—16]) prohibits involuntary liquidation of appellee, except upon action of the commissioner of banking, which latter official has not acted, though this complaint has been called to his attention, and inasmuch as said statute requires the commissioner to take action if the association is insolvent or in danger of insolvency (section 13 [Vernon's Ann. Civ. St. art. 881a—13]), it is conclusively presumed that the appellee is and was solvent. We cannot agree that this proposition is sound. A sound discretion should be granted to the commissioner. If the facts should show that the affairs of the association are being wisely administered and more economically than could be done by a receiver appointed by a court (as in this case where the officials of appellee are serving without pay), we cannot see that appellant should complain. People v. Union Ass'n, 127 Cal. 400, 58 P. 822, 59 P. 692. We note in this connection that in Connally v. Continental Ass'n, 51 S.W.(2d) 293, the Commission of Appeals suggests that the question of insolvency could be inquired into by the court in the absence of action by the commissioner of banking. That was on certified question. The Court of Civil Appeals evidently took the meaning we do from the opinion and remanded the case for fact finding on insolvency. 54 S.W.(2d) 244. Many untoward and disrupting consequences flow from receivership. It dissolves the contractual relationship between the association and its members. The loan contracts become at once due, and the payment of dues is avoided. The commissioner of banking must look to the good of all the members, and we must respect his discretion therein, not abused. We are not unmindful of the plight of appellant. It is the plight of every investor who finds his investment unwise. Liquidation and proportionate distribution is the fairest solution which experience has furnished us.

While the pleading of defendant does not in so many words say the defendant is insolvent, it pleads the facts and alleges the enforcement of plaintiff's claim, and similar claims will force it to cease business. Pleading of facts is better than the conclusions of law to be drawn from them.

▌ The association issued its ratable dividend checks to appellant and others, but required, as a condition of appellant's cashing same, that he sign in writing his consent to their plan of operation. This condition appellee had no right to affix to payment of the dividend.

▌▌ The trial court first entered a temporary injunction restraining defendant from disposing of any of its assets until final trial, but allowed such disposition by appellee to continue if the defendant should set aside, for the exclusive use and benefit of appellant, assets in the value of $20,000. Thereupon the appellee did so. Unless this be regarded as a counterbond or replevin, the court was without power to affix such a condition to his ex parte order. So regarding the order as lawful, liability on deposit or replevin was avoided when the injunction was dissolved as unwarranted.

We have examined all assignments of error. Those not discussed relate to matters of evidence, a discussion of which would be academic. All assignments are overruled, and the judgment is affirmed, without prejudice to the appellant to have his claim scheduled and enforced in accordance herewith, if the appellee should not so recognize it.

### On Motion for Rehearing.

The appellant's prayer in his original petition was for judgment for the withdrawal value of his stock, $16,693, and for an injunction requiring the appellee to apply all of the receipts from the sources named in the statute upon said payment. The record or the briefs are not in sufficient condition to show us what such receipts were for November, 1932.

By a supplemental petition, the appellant alleged a policy of appellee to exchange its real estate and/or notes for stock at withdrawal value. The prayer thereto was for general relief. Whether the appellee was insolvent or not at the time of such exchanges is not found, the trial court confining its findings to insolvency at the time of the trial. In view of that finding, the appellee's right to make such exchanges no longer exists. The question of actual insolvency prior to such adjudication, and the effect thereof, is not before us, and is one on which the holdings of other jurisdictions are not in accord. Laying aside the propriety of asking original relief in a supplemental petition, neither the prayers nor the records enable us to make any finding of fact as to such practices or as to dividend. Therefore, when we said "without prejudice" we intended it to be understood that the right of appellant to enjoin exchanges after insolvency, and his rights as a creditor in the application to his claim of one month's statutory receipts if the association was then solvent, and his right to his dividends, are not cut off by this affirmance, and that he may have his relief in court hereafter if the appellee does not perform its obligations to him.

Motion overruled.